**Civil Action #: 4:25-cv-4119 (ASH)**
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

_____

CHS TX, INC.,

    *Appellant*,

v.

Lisa Brown; Clarence Dean *as Personal Representative of the Estate* of Jesse Dean; Christi Buoncistiano; Hassan Davis; Andrew Dicks; Jamonte Fletcher; Chelsea Gilliam; Chloe Grey; Kennedy Holland; Trent Mason; Susan Blackburn, *as co-personal representative of the Estate of Amanda Mitchell*; Cassandra Oliver *as Personal Representative of the Estate of Michael Anderson*; Larry Parks; Jesus Patino; Kevin Pich; Todd Thomas; Henry Walker; and Thurman Watson.

    *Appellees.*

_____

On Appeal from the U.S. Bankruptcy Court for the Southern District of Texas (Houston Division)
Case No.: 23-cv-90086(CML)

**APPELLANT CHS TX, INC.'S BRIEF IN SUPPORT OF AN ORDER REVERSING THE U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS AND HOLDING THAT THE APPELLEES ARE BOUND BY THE *TEHUM* PLAN'S CONSENSUAL CLAIMANT RELEASE AND ENJOINED FROM PURSUING THEIR LAWSUITS**

Trevor W. Carolan
State Bar No.: 24128898
Southern District Federal No. 3794850
**BOWMAN AND BROOKE LLP**
5850 Granite Parkway, Suite 900
Plano, TX  75024
(972) 616-1700 (Telephone)
Trevor.carolan@bowmanandbrooke.com

Adam M. Masin
*Admitted Pro Hac Vice*
**BOWMAN AND BROOKE LLP**
750 Lexington Avenue
New York, NY 10022
(646) 844-9252 (Telephone)
Adam.masin@bowmanandbrooke.com

***Attorneys for Appellants***
***CHS TX, INC. d/b/a YESCARE***

## **RULE 8012 CORPORATE DISCLOSURE STATEMENT**

Appellant CHS TX, Inc., a Texas corporation with its principal place of business in Brentwood, Tennessee, is a wholly-owned subsidiary of YesCare Corp. No publicly held corporation holds 10% or more of CHS TX, Inc.'s stock.

The Debtor is Tehum Care Services, Inc. (f/k/a Corizon Health, Inc.). As the Debtor's Plan is effective, the successor to the Debtor is the GUC Trustee. No publicly held corporation owns 10% or more of the Debtor or the GUC Trustee. The Debtor and the GUC Trustee are not parties to this appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant requests oral argument. Although the legal principles at issue in this appeal are well-established, the Fifth Circuit has not considered them in the context of a consensual third-party release. This appeal also involves eighteen individual Plaintiffs. Appellant believes oral argument would be helpful to address these circumstances.

# **TABLE OF CONTENTS**

RULE 8012 CORPORATE DISCLOSURE STATEMENT .................................. ii

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CITATIONS ..................................................................... v, vi, vii, viii

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF ISSUES PRESENTED.........................................................2

CONCISE STATEMENT OF THE CASE .........................................................3

SUMMARY OF ARGUMENT .........................................................................9

STATEMENT OF MATERIAL FACTS ...........................................................11

    A. The *Tehum* Bankruptcy and Plan ...............................................11

    B. The Exhibit B Parties Receive Actual Notice of the
       Bankruptcy   Proceeding ..............................................................12

    C. The Plan's Consensual Claimant Release .................................14

    D. The Channeling Injunction ........................................................18

    E. Notice of the Opt Out ..................................................................19

        1. The Plan's notice of the opt out mechanism ..................20

        2. Notice provided to Incarcerated Claimants....................21

        3. Notice provided to Non-Voting Parties .........................22

        4. Publication Notice of Confirmation Hearing.................23

ARGUMENT .................................................................................................24

  I. APPELLEES ARE PRECLUDED FROM RELYING ON A
    LACK OF NOTICE ARGUMENT BECAUSE THEY DID
    NOT OBJECT TO CONFIRMATION OR APPEAL THE
    CONFIRMATION ORDER ..........................................................24

  II. APPELLEES CONSENTED TO THE CONSENSUAL
    CLAIMANT RELEASE BECAUSE THEY HAD ACTUAL
    NOTICE OF THE BANKRUPTCY PROCEEDING, DID
    NOTHING TO PROTECT THEIR RIGHTS, AND DID NOT
    OPT OUT..........................................................................................25

    A. A Consensual Claimant Release with An Opt Out Is an
       Ordinary and Predicable Feature of a Bankruptcy Plan...........25

iv

B. Claimants With Actual Knowledge of a Bankruptcy Proceeding Cannot Avoid its Consequences by Sitting on Their Hands ............................................................................. 27

C. Claimants With Knowledge of the Bankruptcy Proceeding in Time To Opt Out of a Third Party Release Consent To the Release By Failing to Opt Out ................................................. 33

CONCLUSION ........................................................................... 38

# TABLE OF CITATIONS

Cases                                                                          Page(s)

*Bays v. Hertz Global Holdings, Inc.*,
   SA-20-CV-141-XR, 2021 WL 5762033 (W.D. Tex. Dec. 1, 2021) ....................32

*Greyhound Lines, Inc. v. Rogers, (In re Eagle Bus Mfg., Inc.*),
   62 F.3d 730 (5th Cir. 1995) ....................................................................33

*Harrington v. Purdue Pharma L.P.*,
   603 U.S. 204 (2024) ...............................................................................26

*In re Arrowmill Dev. Corp.*,
   211 B.R. 497 (Bankr. D.N.J. 1997) .......................................................34

*In re Bison Bldg. Holdings, Inc.*,
   No. 09-34452, 2012 WL 3230472 (Bankr. S.D. Tex. Aug. 3, 2012)..................32

*In re Bludworth Bond Shipyard, Inc.*,
   93 B.R. 520 (Bankr. S.D. Tex. 1988) ............................................. 25, 33

*In re Camp Arrowhead, Ltd.*,
   451 B.R. 678 (Bankr. W.D. Tex. 2011) ..............................................35

*In re CiCi's Holdings, Inc.*,
   2021 WL 819330 (Bankr. N.D. Tex. Mar. 3, 2021)............................................36

*In re CJ Holding Co.*,
   597 B.R. 597 (S.D. Texas 2019) ...................................... 1, 25, 34, 35

*In re Crager*,
   691 F.3d 671 (5th Cir. 2012) .................................................................2

*In re Gandy*,
   299 F.3d 489 (5th Cir. 2002) ...............................................................2

*In re La Fuente Home Health Servs., Inc.*,
   No. 14-70265, 2017 WL 1173599 (Bankr. S.D. Tex. Mar. 28, 2017)...............28

*In re Lothian Oil, Inc.*,
   650 F.3d 539 (5th Cir. 2011) ..............................................................2

*In re Paddock Enterprises, LLC,*
2022 WL 1746652 (Bankr. D. Del. May 31, 2022) ...............................................36

*In re Pipeline Health Systems, LLC,*
2025 WL 686080 (Bankr. S.D. Tex. Mar. 3, 2025) .................................. 8, 26, 36

*In re Placid Oil Co.,*
753 F.3d 151 (2014) ...................................................................... 37, 38

*In re Price,*
79 B.R. 888 (9th Cir. BAP 1987) ...........................................................30

*In re Robertshaw US Holding Corp.,*
662 B.R. 300 (Bankr. S.D. Tex., 2024) ................................................ 25, 26

*In re Russell,*
193 B.R. 568 (Bankr. S.D. Cal. 1996)......................................................34

*In re Schepps Food Stores, Inc.,*
152 B.R. 136 (Bankr. S.D. Tex. 1993)........................................................8

*In re Texas Tamale, Co., Inc.,*
219 B.R. 732 (Bankr. S.D. Tex. 1998)................................................. 31, 32

*In re TMT Procurement Corp.,*
764 F.3d 512 (5th Cir. 2014) ................................................................1

*In re Waco Town Square Partners, LP,*
536 B.R. 756 (S.D. Tex. 2015)..............................................................2

*In re Whitley,*
737 F.3d 980 (5th Cir. 2013) ...............................................................2

*Jones v. Flowers,*
547 U.S. 220 (2006) ........................................................................28

*Kentucky v. Graham,*
473 U.S. 159 (1985) .......................................................................14

*Kontirck v. Ryan,*
540 U.S. 443 ................................................................................1

*Matter of Christopher*,
 28 F.3d 512 (5th Cir. 1994) .......................................................... 30, 31

*Matter of Sam*,
 894 F.2d 778 (5th Cir. 1990) ........................................................ 29, 30

*Matter v. German Pellets Louisiana, L.L.C.*,
 91 F. 4th 802 (5th Cir. 2024) ..............................................................31

*Mullane v. Central Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950) ...........................................................................28

*Pioneer Brunswick Assoc. Ltd. Partnership*,
 507 US 380 (1993) ..............................................................................34

*Republic Supply v. Shoaf*,
 815 F.2d 1046 (5th Cir. 1987) .............................................................24

*Robbins v. Amoco Prod. Co.*,
 952 F.2d 901 (5th Cir. 1992) ........................................................ 28, 29

*Thornton v. Seadrill Ltd.*,
 626 B.R. 422 (S.D. Tex. 2021) ...................................................... 32, 33

*Unit Corporation v. Gilmore*,
 No. 4:21-CV-435, 2022 WL 956226 (S.D. Tex. March 30, 2022) ......... 28, 30, 31

*United Student Aid Funds, Inc. v. Espinosa*,
 559 U.S. 260 (2010) ...........................................................................28

Statutes

11 U.S.C. § 101(5) ....................................................................................18

11 U.S.C. § 501 ........................................................................................32

11 U.S.C. § 1141(a) ..................................................................................11

28 U.S.C. § 1334 ................................................................................ 1, 16

28 U.S.C. § 1334(e) ....................................................................................1

28 U.S.C. § 157(b)(2)(B) ..........................................................................18

Rules

Fed. R. Bankr. P. 3002(c) ..........................................................................32

## **JURISDICTIONAL STATEMENT**

A bankruptcy court's jurisdiction is governed by 28 U.S.C. § 1334. District courts, and therefore bankruptcy courts, have exclusive jurisdiction over "all cases under title 11." 28 U.S.C. § 1334(e); *In re TMT Procurement Corp.*, 764 F.3d 512, 523 (5th Cir. 2014). Bankruptcy courts have jurisdiction to approve a Plan with consensual third-party releases. *See In re CJ Holding Co*., 597 B.R. 597, 608 (S.D. Texas 2019) ("Bankruptcy courts within the Fifth Circuit commonly exercise jurisdiction to approve nonparty releases based on agreed plans."). None of the Appellees challenged the bankruptcy court's jurisdiction to confirm the Plan or to rule on the Omnibus Motion to Enjoin that is the subject of this appeal. Preclusion prevents a collateral attack on the bankruptcy court's decision confirming its own subject matter jurisdiction. *Id.* at 605 (*citing Kontrick v. Ryan*, 540 U.S. 443, 445 n. (2004)).

A federal district court has jurisdiction to hear appeals from a bankruptcy court's final orders under 28 U.S.C. § 158(a). The bankruptcy court's August 8, 2025 Order was a final Order because it fully disposed of Appellant's motion relevant to this appeal and permitted Appellees to pursue their existing lawsuits in their respective jurisdictions. This appeal is timely because Appellant CHS TX, Inc. filed Notice of Appeal within the time permitted on August 21, 2025. (R. 3666-3687).

## STATEMENT OF ISSUES PRESENTED

**Issue Presented**:

1.        Whether Appellees, creditors who received actual, timely notice of the *Tehum* bankruptcy proceeding but took no steps to protect their rights, are precluded from arguing that they did not receive adequate notice of a Consensual Claimant Release and opt out opportunity when they did not object to Confirmation or appeal the Confirmation Order based on a purported lack of notice?

2.        Whether Appellees, creditors that received actual, timely notice of the *Tehum* bankruptcy proceeding but took no steps to protect their rights, are bound by a Consensual Claimant Release with an opt out opportunity when they took no action to opt out of the releases?

**Standard of Review:**    The district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *See In re Whitley*, 737 F.3d 980, 985 (5th Cir. 2013); *In re Lothian Oil, Inc.*, 650 F.3d 539, 542 (5th Cir. 2011).  Matters within a bankruptcy judge's discretion are reviewed for abuse of discretion. *See In re Gandy*, 299 F.3d 489, 494 (5th Cir. 2002); *In re Waco Town Square Partners, LP*, 536 B.R. 756, 761 (S.D. Tex. 2015).  A bankruptcy court abuses its discretion when it applies an improper legal standard or bases its decision on clearly erroneous findings of fact. *See In re Crager*, 691 F.3d 671, 675 (5th Cir. 2012).

## <u>CONCISE STATEMENT OF THE CASE</u>

The question presented on appeal is whether eighteen "Exhibit B" creditors, who received actual notice of the *Tehum* bankruptcy proceeding but took no steps to protect their rights, are bound by a consensual third-party release with an opt out opportunity when they did not opt out of the releases.[1]   In a Decision and Order entered on August 7, 2025, (R. 3675-3686)[2], the Bankruptcy Court held that these creditors were not bound by the predictable consequences of their inaction, a decision that conflicts with of decades of Fifth Circuit precedent holding that creditors aware of a bankruptcy proceeding ignore it at their own peril.   This Court should reverse the Bankruptcy Court's Order and hold that the Appellees are bound by the *Tehum* Plan's Consensual Claimant Release and are enjoined from prosecuting their respective lawsuits against the Plan's Released Parties.[3]

---

[1] The "Exhibit B" creditors are the parties listed on Exhibit B to the Southern District of Texas Bankruptcy Court's August 7, 2025 "Decision And Order On YesCare's Omnibus Motion To Enjoin Plainitffs From Prosecuting Cases Against Released Parties." (the "Order") (R. 3684-3685).  **This appeal is limited to Exhibit B creditors listed in the caption.**  Exhibit B creditors Jerry Fuller and Renard McClain would have been part of this appeal, but their lawsuits were dismissed following entry of the Order.  **Appellant is not pursing appeal of the other parties listed in Exhibit B.**

[2]  All references to (R. ___) refer to Appellant's Designation of Record and Statement of Issues on Appeal.  (Doc. 6-2).

[3]  All capitalized terms used herein as used a defined in the Plan unless otherwise noted herein.

Tehum Care Services Inc. (f/k/a Corizon Health, Inc.) ("the Debtor"), was a nationwide provider of correctional healthcare before filing for Chapter 11 bankruptcy on February 13, 2023 in a case captioned *In re Tehum Care Services, Inc. (fka Corizon Health, Inc), Case* No. 23-90086 (CML). As set forth in **Exhibit 1**, Appellees are eighteen plaintiffs prosecuting respective personal injury or wrongful death ("PI/WD") lawsuits against one or more of the Debtor's former employees based on the Debtor's provision of healthcare during their incarceration. Many of the Appellees also named as defendants the Debtor and/or Appellant CHS TX Inc. ("CHS TX"), who has been a target of "successor liability" claims following a 2022 Texas divisional merger that resulted in the acquisition of some of the Debtor's assets.[4] Appellees were provided actual notice of the Bankruptcy Proceeding through a Suggestion of Bankruptcy, motion, and/or a stay Order filed in their underlying case, and/or through one or more notices served in the bankruptcy proceeding. None of the Appellees took steps during the bankruptcy proceeding to protect their rights.

The *Tehum* Plan includes a consensual third-party release (the "Consensual Claimant Release") that releases and enjoins Causes of Action against, amongst others, the Debtor, the Debtor's former employees, and "Settlement Parties" that

---

[4] *See* (R. 525-691). CHS TX denies that is a successor to the Debtor under any theory that conflicts with the divisional merger plan or related transactions.

includes CHS TX.  The Consensual Claimant Release was an integral part of the Plan granted in exchange for a minimum of $50 million in payments by Settlement Parties for the benefit of Tehum's creditors in settlement of potential claims against them.  The Plan itself, as well as many other publicly-available documents, provided warnings and information about the method and consequences of opting in or out of the releases.  (R. 1804) (confirming public availability).  As is relevant here, Voting Class claimants classified as holding PI/WD Claims and claimants in Non-Voting Classes as of the time of the Solicitation Order were mailed an "Opt Out Release Form" discussed in the Plan.  (R. 1803-1804); (R. 853-863) (Opt Out Release Form).  Any claimant had the opportunity to request the Form, and claimants had the same opportunity to object to or to formally opt out of the Consensual Claimant Release by the Voting Deadline regardless of their ability to vote on the Plan.  Any Party that declined to affirmatively opt out was considered a Consenting Creditor under the Plan.  The Plan became effective on March 31, 2025.

On May 16, 2025, CHS TX filed an "Omnibus Motion to Enjoin Plaintiffs From Prosecuting Cases Against Released Parties."  (R. 2158-2217).  CHS TX argued that plainitffs pursuing Cause of Action against Released Parties who did not opt out of the Consensual Claimant Release were enjoined from further prosecuting their claims as long as the Plan's releases and injunctions did not terminate or become void.  The Omnibus Motion was necessary because the

bankruptcy court retained exclusive jurisdiction over enforcement of the Plan and plainitffs at issue had not indicated their agreement to stay their respective lawsuits pending the final result of the bankruptcy.

Of the eighteen Exhibit B creditors at issue herein, only the following filed timely objections to the Omnibus Motion: (1) Lisa Brown (R. 2527-2564), (2) Clearence Dearn a/p/r/ Jesse Dean (R. 2419-2444), (3) Andrew Dicks (R. 2339-2418), and a joint opposition by (4) Jamonte Fletcher, (5) Chelsea Gilliam, (6) Chloe Grey (R. and (7) Kennedy Holland (R. 2629-2665).[5]  Appellant filed replies to each, (R. 2445-2523; 2565-2628; 2899-2988 (Brown); 3522-3541; as well as an Omnibus Reply (R. 3450-3468).

In response to the Motion, the Bankruptcy Court held that 52 creditors listed in an Exhibit A to its Order were enjoined from prosecuting their actions because they were bound by the Consensual Claimant Release.  (R. 3675-3686).  Each of the "Exhibit A" creditors had been served with the Opt Out Release Form but did not return it as required by the Plan.[6]  The Court held that the Exhibit B creditors

---

[5] Todd Thomas filed a long-belated declaration on September 2, 2025 admitting he was a Holder of a claim against the Debtor but denying receipt of documents from bankruptcy proceeding.  (Bnkr. Doc. 2437).

[6] The Bankruptcy Court reserved judgment on "Exhibit C" parties who received the Opt Out Release Form, did not return it, but who also did not receive a "ballot" because they were classified as Non-Voting.  (R. 3686).  These parties are not subject of the instant appeal.  Appellant reserves its rights relating to these parties to the extent necessary.

were not enjoined or subject to the Consensual Claimant Release because they were not served with the Opt Out Release Form.  The Bankruptcy Court found that the Exhibit B Parties were "known creditors"[7] entitled to "actual notice" of the Consensual Claimant Release because they "are litigating against Tehum and/or YesCare Parties."[8]   The Bankruptcy Court's held that "there can never be constructive notice of a consensual release between third-parties under a chapter 11 plan."  The Bankruptcy Court did not consider the court-approved publication notice to be sufficient notice "for consensual third-party releases," but rather "it would provide sufficient notice of the deadline to object to plan confirmation and the confirmation hearing date for unknown creditors."  The Bankruptcy Court found that "[a]ny party who did not receive the Court approved Opt-Out Release Form did not have an opportunity to express consent.  So they could never be bound by any other unrelated notice or pleading in the Tehum case."   In a footnote, the

---

[7]  The Bankruptcy Court's inclusion of Hassan Davis as a "known creditor" for notice purposes was wrong.  Attempted service of Davis's Complaint was not made until March 21, 2025, which was **after** the March 3, 3025 Confirmation Hearing.  *See Davis v. Manning et al.,* 24-cv-03606 (D. Md.) (Doc. 9); Bnkr Doc. 2013.  This Court should reverse as to Davis on that basis alone.

[8]  The term "YesCare Parties" is not a defined term in the Bankruptcy Court's Order or the Plan.  The Exhibit B Plaintiffs are suing former employees or agents of the Debtor when it was known as Corizon Health, Inc., not "YesCare" employees.  There was no factual basis for the Bankruptcy Court to refer to the Exhibit B defendants as "YesCare Parties."  They are "Released Parties" under the Plan.

Bankruptcy Court acknowledged Fifth Circuit precedent holding "'[o]nce creditors know about the bankruptcy, then they must take steps to protect their rights.' *In re Schepps Food Stores, Inc.,* 152 B.R. 136, 138 (Bankr. S.D. Tex. 1993).'"  The Bankruptcy Court found that this line of precedent "does not apply here" because "[n]one of those cases involve enforcing consensual releases between third-parties."[9]

The Exhibit B creditors actually include three groups of plainitffs who did not receive the Opt Out Release Form: (i) plaintiffs whose potential knowledge of the bankruptcy has not yet been established (and who are not subject of this appeal), (2) plaintiffs who received actual, timely notice of the bankruptcy proceeding in their respective lawsuits, and (3) plaintiffs who participated in and/or received other timely notices from the bankruptcy proceeding itself.  This appeal only concerns groups 2 and 3—those who demonstrably had actual, timely notice of the proceeding but failed to act on their knowledge.

---

[9] As discussed further herein, the Southern District of Texas Bankruptcy Court itself has applied this line of precedent to consensual third-party releases. *See In re Pipeline Health Systems, LLC*, 2025 WL 686080, *3-4 (Bankr. S.D. Tex. Mar. 3, 2025) (claimant bound by consensual third-party release when he did not receive the opt out release form "because he did not file a proof of claim.").

## SUMMARY OF ARGUMENT

This Court should reverse the Bankruptcy Court's holding that the Exhibit B creditors at issue are not bound by the Consensual Claimant Release or enjoined from further prosecuting their lawsuits. Hundreds of bankruptcy plans in the Fifth Circuit have been confirmed with a consensual third-party release. An opt out opportunity is a standard feature of these consensual releases. It has been bedrock Fifth Circuit law for the more than thirty years that a claimant with knowledge of a bankruptcy proceeding in time to protect their rights ignores that proceeding at its own peril. The Exhibit B creditors should not be permitted to avoid a normal feature of a confirmed Plan and upset the benefit of CHS TX's hard-fought bargain *because* they sat on their hands with knowledge of the Debtor's bankruptcy.

As creditors who were provided actual notice of the Debtor's bankruptcy proceeding, the Appellees had a duty to inquire about the impact of the bankruptcy on their claims and a duty to take action to preserve any rights they wanted to preserve. None of them took action to protect any of their rights—including by filing a proof of claim or requesting notices. Any creditor provided actual notice of the bankruptcy who was suing the Debtor, potential successors like CHS TX, or the Debtor's employee(s) based on the quality of the healthcare they received in prison should have understood that the Debtor's bankruptcy could impact their claims and that they would need to take action to protect their rights. Anyone on notice of the

9

proceeding had easy access to numerous, publicly-available documents that informed claimants about the scope of Consensual Claimant Release and opt out form and procedure. Most notably, the publicly available Plan provided this information in detail months in advance of the Voting Deadline. And any of these creditors could have requested the Opt Out Release Form or objected to the releases prior to or at the Confirmation Hearing. But no Exhibit B creditors took **any** steps to object to or opt out of the releases.

The Bankruptcy Court's Order wrongly conflated adequate notice for due process purposes with receipt of the Opt Out Release Form. Adequate notice for due process purposes does not require a particular piece of paper. Adequate notice is notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. All Exhibit B Parties had actual notice (and knowledge) of the pendency of the action many months in advance of the Voting Deadline. Like all creditors, they plainly had the opportunity to opt out. There is no reason why decades of law binding creditors who sit on their hands to the consequences of their inaction should not apply to bind creditors to a routine consensual third-party release when they took no action to preserve their rights.

Because the U.S. Supreme Court left open some issues in the *Harrington v. Purdue Pharma* case related to consensual third-party releases, it is important to

10

note what is **not** at issue in this appeal.  Appellees are precluded from using this appeal as an untimely, post-Confirmation collateral attack on Confirmation Order's approval of the concept of consensual third-party releases, the opt out mechanism for obtaining consent, or the specific releases or opt out mechanism in confirmed in *In re Tehum*.  *See* 11 U.S.C. § 1141(a).  Appellees did not preserve these arguments because they did not object to the Consensual Claimant Release or to any aspect of the opt out mechanism prior to confirmation and they did not appeal the Confirmation Order.

Although the Fifth Circuit has not addressed the duties at issue in this appeal in the context of consensual third-party releases, the Order on appeal cannot be squared with the duties to inquire and act that undergird thirty years of Fifth Circuit bankruptcy precedent.  Consistent with those principles, this Court should reverse the Bankruptcy Court's Order and order that Exhibit B creditors are enjoined from prosecuting their actions because they are bound by the Consensual Claimant Release.

## STATEMENT OF MATERIAL FACTS

### A.    The *Tehum* Bankruptcy and Plan

On February 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (R. 5).  Claimants who did not file a timely proof of claim were barred from voting on the plan of

reorganization, receiving distributions from the Debtor on account of such claims in the chapter 11 case, and were barred and enjoined from asserting such claims against the Debtor.  (Doc. 499, ¶ 13-14).  By Order dated March 3, 2025, the Court confirmed the *First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors and Debtor* (the "Plan").  (R. 1839-1967) (Confirmation Order and Exhibits); (R. 1897-1961) (Plan). The Plan became effective on March 31, 2025.  (R. 205, Doc. 2088).

Upon the Effective Date, the Confirmation Order became binding on "All Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan."  (R. 1871-1872).  The Confirmation Order found "that notice of the Confirmation hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby…"  (R. 1844).  The Confirmation Order also contains a broad injunction precluding and enjoining "any actions to interfere with the implementation and consummation of the Plan."  (R. 1881).  None of the Exhibit B Parties objected to the Plan confirmation or appealed the Confirmation Order.

**B.    The Exhibit B Parties Receive Actual Notice of the Bankruptcy Proceeding**

As set forth in Exhibit 1 to this brief, the Exhibit B Parties are 15 individual plainitffs who brought lawsuits against one or more "Released Parties" in the Plan.

12

and received one or more forms of actual notice of the bankruptcy proceeding, including documents and Orders filed in their respective lawsuits and/pr receipt of notices from the bankruptcy proceeding itself. *See* **Exhibit 1**.

Many of the Exhibit B Parties brought claims directly against the Debtor or a YesCare entity. *Id*. To the extent the Exhibit B Parties brought claims against the Debtor's former employee(s) individually, most also expressly brought claims against them in their official capacity and the close relationship between claims against the former employee(s) and the Debtor is evident from their pleadings. As is typical of their Complaints, creditor Brown (who also sued CHS TX) alleged "[a]t all relevant times," the Former Employees were "employed by CHS TX Inc., f/k/a Corizon Health" and were "acting . . . in the course and scope of [their] employment with CHS TX Inc., f/k/a Corizon Health." (R. 2965-2966) Based on similar allegations, the court in creditor Mason's case found "we are persuaded that it is quite likely that "there is such identity between [Corizon] and the [Ford] that [Corizon] may be said to be the real party defendant and that a judgment against [Ford] will in effect be a judgment or finding against [Corizon]…So Corizon's bankruptcy weighs heavily here." *Garner v. Blanche et al*., 2:24-cv-00459 (E.D. Pa. Jun. 26, 2024) (Doc. 53) (Order granting stay). The court in creditor Thomas's case—as applies to the Exhibit B cases generally—similarly stated: "The Court notes that Plaintiff has indicated his intent not to proceed against Defendant Corizon

13

Inc …. Plaintiff, however, has also indicated that he wishes to sue the medical defendants, Corizon employees, in their official capacities.  Plaintiff should be aware that "a suit against a governmental official in his [or her] official capacity is deemed a suit against the entity that he [or she] represents." *Thomas v. Jordan, et al.*, #: 6:23-cv-01355 (M.D. Fl.) (Doc. 63, p.4, n. 3.); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

### C.    The Plan's Consensual Claimant Release

The Plan defines "Released Parties" to include, amongst others, the Debtor, the "Settlement Parties," and "each of their respective current and former officers, directors, managers, employees, contractors, agents, attorneys, and other professional advisors." (R. 1914, ¶ 175).  CHS TX is one of the named "Settlement Parties," and therefore, a Released Party.  (R. 1915, ¶ 182).

The Plan's Consensual Claimant Release releases the Released Parties from "all claims or Causes of Action…against a Released Party that are released under the Plan and the Confirmation Order."  (R. 1914, ¶ 173).[10]  Pursuant to the Plan's Consensual Claimant Release, "[a]s of the Final Payment Date":

---

[10]  The Plan's broad definition of "Causes of Action" includes "any claims, causes of action…suits…judgments, liabilities…of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or

Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each Released Party of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing…

(R. 1930-1931, 1949-1950).

The consideration provided by the Released Parties for the Consensual Claimant Release included the Settlement Payment, which provides that the Settlement Parties shall make or cause to be paid aggregate Cash payments benefitting the Debtor's creditors in the minimum amount of $50,000,000.00 payable over the Settlement Payment Schedule. (R. 1928-1929); *see also* (R. 1219-1220). Of that amount, $25 million cash, plus interest, a 50/50 allocation of the

---

unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. (R. 1903, ¶ 18).

Debtor's Employee Retention Credits, and a 50/50 allocation of the Debtor's remaining assets funded a settlement trust for PI/WD claimants (the "PI/WD Trust") who timely filed individual proof of claim. (R. 1929). The Plan specified that "the intent of the parties to the Estate Party Settlement that: (a) the contributions made by the Settling Parties to the Trusts should be the sole payments the Released Parties shall make to address the Released Claims [and] (b) a claim by a Consenting Claimant against any non-party arising out of a Released Claim should not result in any additional payment by any Released Party…" (R. 1932), *see also* (R. 1883).

The Settlement Payment was the product of lengthy, hard-fought arms-length negotiations and resulted in significant recoveries for creditors while avoiding the risk of litigation. (R. 1219-1220). The Plan recognized that the Consensual Claimant Release was provided in exchange "for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan." (R. 1949). The Confirmation Order held that "[t]he release of Claims and Causes of Action by the Consenting Claimants, as set forth in Article IV.B.7 and IX.D of the Plan, constitutes an essential and critical provision of the Plan and forms an integral part of the agreement embodied in the Plan among all parties in interest." (R. 1858, ¶ 45). The Confirmation Order further held:

> 46.    The Consensual Claimant Release is: (a) consensual as to the Consenting Claimants, respectively; (b) within this Court's jurisdiction pursuant to 28 U.S.C. § 1334; (c) in exchange for the good and valuable consideration provided by the Released Parties; (d) a

16

good-faith settlement and compromise of the Claims and Causes of Action released by such release; (e) in the best interests of the Debtor and its creditors; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) appropriately tailored under the facts and circumstances of the Chapter 11 Case.

47.   The Consensual Claimant Release and its protections were necessary inducements to the participation of the Debtor's stakeholders in the negotiations and compromises that led to the Plan and the structure thereof, including the Estate Party Settlement.

(R. 1858,  ¶¶ 46-47;1874-1875, ¶ 91).

The Plan provided a "walk away" mechanism that permitted the Settling Parties to terminate the settlement if more than 5% of current Holders of PI/WD Claims who are entitled to vote on the Plan elected to opt out of the Consensual Claimant Release before the Voting Deadline.  (R. 1930, ¶ 5).  This provision allowed the Settling Parties to know the scope of the Consensual Claimant Release before the Confirmation Hearing based on the voting data.  That certainty was possible because any Holder of Claim who wished to elect to opt out of the Consensual Claimant Release must have done so prior to the Voting Deadline.  (R. 1922, ¶ D).  Indeed, parties who could not vote on the Plan still had the opportunity of opt out of the Consensual Claimant Release.  (Doc. 1813, Ex. 1, I.31.).  The scope of the Consensual Claimant Release was not open-ended to allow previously silent claimants to join the affirmative opt-outs after the Voting Deadline.

### D.    The Channeling Injunction

Under the Plan, "Claim" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code.  (R. 1903, ¶ 28).  A "Holder" of a Claim means "any Person or Entity holding a Claim...."  (R. 1909, ¶ 105).  Plaintiffs who could or did assert injuries arising from conduct attributable to the Debtor are Holders of "PI/WD Claim," which is defined as:

> any unsecured Claim against the Debtor that is attributable to, arises from, is based upon, relates to, or results from an alleged personal injury tort or wrongful death claim within the meaning of 28 U.S.C. § 157(b)(2)(B), including any PI/WD Claim against the Debtor.

(R. 1912, ¶ 142).  Holders of PI/WD Claims who did not opt out became a "Consenting PI/WD Claimant."  (R. 1905, ¶ 45).  Consenting PI/WD Claimants have their claims "channeled" into a PI/WD Trust and are subject to a Channeling Injunction.  (R. 1903, ¶¶ 23, 25; 1925, 1937-1940); *see also* (R. 1933, ¶ D.) ("All Channeled PI/WD Trust Claims shall be subject to the Channeling Injunction.").

The Channeling Injunction prohibits Plaintiffs from pursuing recovery outside of a PI/WD Trust against "any Released Party":

> the sole recourse of any Holder of a Channeled PI/WD Trust Claim that is eligible for compensation under the PI/WD Trust Distribution Procedures on account of such Channeled PI/WD Trust Claim shall be to and against the PI/WD Trust pursuant to the PI/WD Trust Documents, and such ***Holder shall have no right to assert such Channeled PI/WD Trust Claim or any Claim against the Debtor or against any Released Party***…

…on or after the Effective Date, and subject to the terms of Article IX.I.5, all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim **shall be stayed, restrained, and enjoined** from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery **from any Released Party** with respect to any such Channeled Claim, other than from the Trusts…

(R. 1951, ¶ 2).  The Plan further provides: "[e]xcept as provided in the Plan, Holders of Channeled PI/WD Claims shall be enjoined from prosecuting any outstanding or filing future Claims against the Released Parties in any forum whatsoever, including any state, federal, or non-U.S. court."  (R. 1925, ¶6(a)(i)).

### E.    Notice of the Opt Out

All Exhibit B Parties had the ability to request notices from the bankruptcy proceeding pursuant to Bankruptcy Rule 2002, and had they done so, the Solicitation Order required the Solicitation Agent to send them the Solicitation Package described below, which included the Opt Out Release Form.  (Doc. 1813, Ex. I, III.2.).  The Confirmation Order held that "[a]ll applicable parties received due and adequate notice of the Consensual Claimant Release and had the opportunity to opt out of the Consensual Claimant Release."  (R. 1859, ¶ 48).[11]

---

[11] The Bankruptcy Court repeatedly approved of the form and manner of notice to claimholders.  *See* Bankr. Doc. 1813, ¶ J; Bankr. Doc. 1813 at 9, ¶ 18; Bankr. Doc. 2014 at 6; § G, ¶ 10.  In addition to the Plaintiffs' actual knowledge and notice, notice of Deadlines for the Filing of Proofs of Claim was published in The New York Times on May 8, 2023, and in The Wall Street Journal on May 9, 2023, s*ee*

### 1. The Plan's notice of the opt out mechanism

The Plan provided creditors with notice of the opt out mechanism and need to return an Opt Out Release Form by the Voting Deadline.[12]  The Plan provided a black box, all caps warning on its cover page about the channeling injunction and opt opt mechanism for third-party releases:

> THE PLAN PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF A CHANNELING INJUNCTION PURSUANT TO SECTIONS 105(a) OF THE BANKRUPTCY CODE THAT CHANNELS ALL CLASS 4, CLASS 6, AND CLASS 9 CLAIMS, *I.E.*, CLAIMANTS WHO HAVE NOT OPTED OUT OF THE CONSENSUAL CLAIMANT RELEASE (AS DEFINED HEREIN), TO SEPARATE TRUSTS.  CLAIMANTS WHO ELECT TO OPT OUT OF THE CONSENSUAL CLAIMANT RELEASE SHALL HAVE NO RIGHT TO RECOVER FROM THE TRUSTS, BUT MAY PURSUE RECOVERIES IN THE CIVIL JUSTICE SYSTEM.

(R. 1897).  *See also* (R. 1901) ("Claimants who opt out of the Consensual Claimant Release shall have no right to recover from the PI/WD Trust or the GUC Trust.").  The Plan also provides notice of the Opt-Out Release Form.  (R. 1911, ¶ 132) ("'*Opt-Out Release Form*'" means the form approved by the Bankruptcy Court for opting out of the Consensual Claimant Release. Claimants may vote to accept the Plan on a Ballot and, at the same time, elect to opt out of the Consensual Claimant Release.")).  The Plan warns:

> The Opt-Out Release Form shall be used by all Holders of Claims against the Debtor that wish not to grant, and therefore elect to opt-out of, the Consensual Claimant Release set forth in **Article IX.D** of the Plan. Any Holder of a Claim who wishes and intends to elect to opt

---

Bankr. Doc. 610, and Notice of Deadlines for the Filing of Proofs of Claim was also published in the Prison Legal News in the June 2023 issue.  *See* Bankr. Doc. 658.

[12]  The Plan contains no fewer than 119 references to the opt-out option, including a discussion of various opt-out classifications.

out of the Consensual Claimant Release set forth in **Article IX.D** of the Plan must do so prior to the Voting Deadline.

(R. 1922).  The Plan further defines "Consenting PI/WD Claimant" to include:

(a) any Holder of a PI/WD Claim who votes to accept or is deemed to accept the Plan **and** who does not check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release, including any who elect to pursue insurance recoveries under and consistent with **Article IV.C**.; (b) any Holder of a PI/WD Claim who abstains from voting on the Plan, votes to reject the Plan, or is deemed to reject the Plan **and** who does not (i) check the box on the Opt-Out Release Form to affirmatively opt out of the Consensual Claimant Release or (ii) object to the Plan in respect of the Consensual Claimant Release; and (c) any Holder of a PI/WD Claim who elects to receive an Expedited PI/WD Claim Distribution. No Holder of an Opt-Out PI/WD Claim shall be a Consenting PI/WD Claimant.

(R. 1905, ¶ 45 (emphasis in original)).

The eventually-confirmed Plan was publicly filed for the first time on October 2, 2024.  (R. 167, Doc. 1739).  The publicly-available Solicitation Order, dated November 13, 2024, set the Voting Deadline on February 21, 2025, at 5:00 p.m. CT.  (R. 978(e)).

## 2. Notice provided to Incarcerated Claimants

The Solicitation Order provided that Incarcerated Claimants who were on the Debtor's schedules, filed a proof of claim, or made a request for notices were mailed hard copies of the Solicitation Package, including:

(a) a cover letter describing the contents of the Solicitation Package;

(b) the Confirmation Hearing Notice;

(c) a copy of the Solicitation Procedures;

(d) a copy of the Disclosure Statement with all exhibits, including the Plan with its exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date);

(e) the Solicitation Procedures Order (without exhibits); a

(f) an Opt-Out Release Form, instructions for the same, and a pre-addressed, return envelope for the completed Opt-Out Release Form;  (Doc. 1813, Ex. 2).

(g) an appropriate Ballot, voting instructions for the same, and a pre-addressed, return envelope for completed Ballots;

(h) a letter from the TCC urging such claimants to vote to accept the Plan; and

(i) any other materials ordered by this Bankruptcy Court to be included as part of the Solicitation Package.

(R. 980).

### 3.  Notice provided to Non-Voting Parties

Holders of Claims in the Non-Voting Classes were provided a copy of the Confirmation Hearing Notice, Notice of Non-Voting Status, and the Opt Out Release Form.  *See* (R. 3658).  The Notice of Non-Voting Status provided:

> Notwithstanding the fact that You are not entitled to vote to accept or reject the Plan, You nevertheless may be a party in interest in the Chapter 11 Case and You, therefore, may be entitled to participate in the Chapter 11 Case, including by filing objections to confirmation of the Plan. If You would like to object to the Plan, You may do so by filing Your objection no later than February 21, 2025, at 5:00 p.m. (Prevailing Central Time).

(R. 1076, ¶ 2).  The Notice of Non-Voting Status also restated the full Consensual Claimant Release, Channeling Injunction, and Summary of Plan Treatment of

Claims and Interests.  (R. 1077-0883, 1084-1085, 1086-1088).  The Notice of Non-Voting Status also warned: "The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect Your rights….The Plan Proponents urge all Holders to read through the entire Plan and Disclosure Statement, plus any additional and related documentation" and provided instructions for obtaining the Plan and Disclosure Statement.  (R. 1083, 1088-1089).

### 4.  Publication Notice of Confirmation Hearing

Court approved publication of the *Notice of Deadline for Casting Votes to Accept or Reject Proposed Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor*, was published in the Prison Legal News in the December 2024 issue.  (R.1734-1737, 1804).  Publication notice included reference to the Plan's releases, warnings regarding untimely objections and instructions for obtaining the Plan, Disclosure Statement, or Solicitation Procedures Order.  (R. 1737).

# **ARGUMENT**

## I.    APPELLEES ARE PRECLUDED FROM RELYING ON A LACK OF NOTICE ARGUMENT BECAUSE THEY DID NOT OBJECT TO CONFIRMATION OR APPEAL THE CONFIRMATION ORDER

This Court should hold that the Appellees are precluded from relying on an argument that they did not consent to the Consensual Claimant Release based on a purported lack of adequate notice. There are two notice issues that impact this result: (1) notice of the Confirmation Hearing, and (2) notice of the Consensual Claimant Release and opt out. The Confirmation Order held "that notice of the Confirmation hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby…" (R. 1844) (emphasis added). The Confirmation Order also held without any caveats that "[a]ll applicable parties received due and adequate notice of the Consensual Claimant Release and had the opportunity to opt out of the Consensual Claimant Release." (R. 1859, ¶ 48).

None of the Appellees filed a motion before the bankruptcy court objecting to the releases or the opt out mechanism, objected to the Plan, or appealed from the Confirmation Order's adequate notice holdings. Accordingly, this Court should hold that the Appellees waived any lack of notice argument. *See Republic Supply v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987) ("Questions of the propriety or legality of

24

the bankruptcy court confirmation order are indeed properly addressable on direct appeal. Republic, however, is now foreclosed from that avenue of review because it chose not to pursue it."); *In re CJ Holding Co.,* 597 B.R. 597, 611 (S.D. Tex. 2019) ("Once the confirmation order became final, preclusion prevents the creditor from challenging the enforcement of the order in a later litigation…"); *In re Bludworth Bond Shipyard, Inc.*, 93 B.R. 520, 521 (Bankr. S.D. Tex. 1988) ("Failure on the part of a party in interest to file an objection to confirmation prior to the deadline fixed by the court results in waiver of the right to object.").

In addition, Exhibit B parties Oliver (Anderson), Buoncistiano, Davis, Mason, Mitchell, Parks, Patino, Pich, Walker, and Watson did not object to the relief sought in Appellant's Motion.  Having failed to raise ***any*** arguments below, this Court should hold that they waived opposition to Appellant's motion.

## II.    APPELLEES CONSENTED TO THE CONSENSUAL CLAIMANT RELEASE BECAUSE THEY HAD ACTUAL NOTICE OF THE BANKRUPTCY PROCEEDING, DID NOTHING TO PROTECT THEIR RIGHTS, AND DID NOT OPT OUT

### A.    A Consensual Claimant Release with An Opt Out Is an Ordinary and Predicable Feature of a Bankruptcy Plan

Bankruptcy Courts in the Fifth Circuit have confirmed "hundreds" of chapter 11 cases with consensual claimant releases with an opt out opportunity.  *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex., 2024); *In re CJ Holding.,* 597 B.R. at 608 (listing cases).  The *Tehum* Consensual Claimant

Release with an opt out opportunity is consistent with Fifth Circuit precedent and *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 226 (2024) (barring *nonconsensual* third-party releases) because it provided all claimants with the opportunity to fully opt out of the releases. *See In re Robershaw*, 662 B.R. at 323 ("There is nothing improper with an opt-out feature for consensual third-party releases in a chapter 11 plan."); *In re Pipeline Health Systems, LLC*, 2025 WL 686080, *3-4 (Bankr. S.D. Tex. Mar. 3, 2025) ("Opt-out procedures are a proper means to obtain consent to third-party releases in a chapter 11 plan.").

The release in *Purdue* was nonconsensual, unlike here, because it would have bound even those who objected to it prior to confirmation. *See Purdue*, 603 U.S. at 212 ("many pleaded with the bankruptcy court not to wipe out their claims…without their consent"). But *Purdue* did not limit consensual releases such as those in *Tehum*. *Id*. at 226 ("[n]othing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan." (italics in original). The Supreme Cout also declined "to express a view on what qualifies as a consensual release." *Id*. Bankruptcy courts in the Fifth Circuit, including in *Tehum*, have continued post-*Purdue* to confirm consensual third-party releases with an opt out opportunity. *See In re Robershaw*, 662 B.R. at 323; *In re Pipeline Health Systems, LLC*, 2025 WL at, *3-4.

A consensual third-party release is therefore a normal feature of a confirmed bankruptcy plan.   In this case, it was the product of extensive, arms-length negotiations with the Settling Parties and resulted in more than $50 million for the benefit of Tehum's creditors.  The Settling Parties necessarily relied on the certainty that the Voting Deadline provided regarding the scope of the opt-out claims it would have to defend so it could judge whether to invoke the "walk away" option or make the intended Settlement Payments.  The Exhibit B creditors should not be permitted to dodge the Plan, avoid the Consensual Claimant Release, and upset the benefit of the Settling Parties negotiated bargain by failing to take any action to object or to opt out of the releases. [13]

### B.    Claimants With Actual Knowledge of a Bankruptcy Proceeding Cannot Avoid its Consequences by Sitting on Their Hands

Any creditor provided actual notice of the Debtor's bankruptcy had both a duty to inquire about the impact of the bankrpotucy on their claims and a duty to take action to protect any rights they wished to protect.  The Exhibit B creditors should not be permitted to benefit from their inaction.

The general notice that due process requires is:

---

[13] To the extent the Exhibit B creditors argue that they personally do not benefit from the Settlement Payment, the Court should reject that argument.  Once again, their own inaction is the reason why—they cannot recover from the PI/WD Trust because they did not file a timely proof of claim.

> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) (citations omitted). "[D]ue process does not require actual notice." *Jones v. Flowers*, 547 U.S. 220, 225 (2006); *In re La Fuente Home Health Servs., Inc.,* No. 14-70265, 2017 WL 1173599, at *3 (Bankr. S.D. Tex. Mar. 28, 2017) ("More importantly, actual notice is not the standard that is required for due process to be satisfied."). For example, in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010), the U.S. Supreme Court found that a deprivation of a procedural right to receive certain documents under the Bankruptcy Rules could have been timely objected to but "did not amount to a violation of [the] constitutional right to due process" when the claimant had actual notice of the bankruptcy proceeding itself.

All Exhibit B creditors nevertheless had actual notice of the bankruptcy proceeding through a Suggestion of Bankruptcy, a motion or Order filed in their respective lawsuits, through receipt of notice in the bankruptcy proceeding itself. Several appeared in the bankruptcy proceeding. *See* Exhibit 1; *Unit Corporation v. Gilmore*, No. 4:21-CV-435, 2022 WL 956226, *7 (S.D. Tex. March 30, 2022) (Suggestion of Bankruptcy provided actual notice triggering duty "to take steps to ascertain" bar date); *Robbins v. Amoco Prod. Co.,* 952 F.2d 901, 908 (5th Cir. 1992)

(letter from Magistrate triggered duty "to put her on guard to inquire about any actions necessary to avoid discharge of her claims.").

The Fifth Circuit has long-held that "[w]hen the holder of a large, unsecured claim receives any notice that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *Robbins*, 952 F.2d at, 908 (5th Cir. 1992) (adopting rationale in *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1123 (9th Cir. 1983)) (emphasis added). Thus, "[w]hatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led." *Id*.

Following *Robbins*, the Fifth Circuit established a two-part test to determine if notice satisfied due process: (1) whether the notice apprised the claimant of the pendency of the action, and (2) whether the notice was sufficiently timely to permit the claimant to act. *See In the Matter of Sam*, 894 F.2d 778, 782 (5th Cir. 1990). In *Matter of Sam*, the Fifth Circuit applied this test to hold that a creditor who first learned of the bankruptcy case through notice of the automatic stay eighteen days prior to the bar date was put on notice with sufficient time to present his objections for due process purposes even though he did not receive notice of the automatic stay until after the bar date passed. *Id*. at 782. The Court found that the burden upon a creditor with notice of the bankruptcy petition to determine the bar date was

not "so burdensome as to outweigh the need for expeditious administration of bankruptcy cases." *Id*. at 781 (*citing In re Price*, 79 B.R. 888, 892–93 (9th Cir. BAP 1987)). The Fifth Circuit further found that the policy behind the notice rules was "satisfied when the creditor has actual knowledge of the case in time to permit him to take steps to protect his rights." *Id*. (emphasis added). *See also Unit Corp*, 2002 WL at 956226, * 8 (affirming bankruptcy court holding that creditor was required "to take steps to ascertain the General Bar Date when he learned about the Unit's bankruptcy" through a Suggestion of Bankruptcy).

The Fifth Circuit again applied this two-part test in *In the Matter of Christopher*, 28 F.3d 512 (5th Cir. 1994). The Court recognized: "[w]e have concluded that it does not offend due process to view actual notice of a debtor's bankruptcy to a prepetition creditor as placing a burden on the creditor to come forward with his claim." *Id*. at 517. The Court held that a claimant who had actual notice of the bankruptcy prior to its claim arising was "sufficient to satisfy the dictates of due process and *Mullane*" and "due process is not offended…by requiring postpetition claimants…to come forward and protect their enhanced rights under the Code or else lose their rights through the sweeping discharge of Chapter 11." *Id*. at 519. The Court rejected the argument that the creditor was entitled to formal notice of the confirmation hearing date because "due process requires only notice that is both adequate to apprise a party of the pendency of an

action affecting its rights and timely enough to allow the party to present its objections." *Id.*

The Fifth Circuit has continued to apply this test to require claimants with timely knowledge of a bankruptcy to act to protect their rights. In *Matter v. German Pellets Louisiana, L.L.C*., 91 F. 4th 802 (5th Cir. 2024), for example, the Court rejected an argument from a creditor that it could not have known that filing a proof of claim was required to protect its rights when those rights arose pre-petition and the creditor had actual knowledge of the bankruptcy but never asserted its rights or objected to the plan. Likewise, in *Unit Corp.,* 2002 WL at 956226, * 8 the Southern District of Texas affirmed the bankruptcy court's conclusion that the creditor's failure to file his proof of claim before the General Bar Date "was within [his] reasonable control" because he "knew about Unit's bankrpotucy well before that."

Thus, the policy in this Circuit is well-established that "[c]reditors should not be encouraged to sit on their hands during the bankruptcy process and then later pursue their claims in another forum after the debtor's plan has been confirmed." *In re Texas Tamale, Co., Inc*., 219 B.R. 732, 740 (Bankr. S.D. Tex. 1998). That is exactly what Appellees are trying to get away with. In *Texas Tamale,* the court applied the *In re Sam* test to hold that a creditor who received sufficient notice of the bankruptcy case after the bar date had a duty to prosecute a motion to allow a late filed claim. The Bankruptcy Court found that the creditor had "several months

31

prior to confirmation in order to assert his claim, could have protected his rights with a motion to allow late filed claim, and that it would have been "highly improbable that such a motion would not be granted…". Thus, "[w]ith the constitutional safeguards of notice met, [the creditor's] failure to meet his duty to act is fatal to his claims." *Id.*; *Thornton v. Seadrill Ltd.*, 626 B.R. 422, 430 (S.D. Tex. 2021) (creditor with notice could have filed motion to file late proof of claim). Here, the Appellees' constitutional safeguard of notice of the proceeding was met and they had months to act to protect their opt out rights but did nothing.

The onus on creditors with knowledge of the bankruptcy proceeding to take action to protect their rights or face losing them is a core principle of bankruptcy law. As a litany of cases have held, creditors who receive notice of a bankruptcy proceeding but do not submit a timely Proof of Claim are barred from recovery. Fed. R. Bankr. P. 3002(c); 11 U.S.C. § 501. *See also In re Bison Bldg. Holdings, Inc.*, No. 09-34452, 2012 WL 3230472, at *3 (Bankr. S.D. Tex. Aug. 3, 2012) ("The failure to file a timely proof of claim, to investigate the bankruptcy case, or to do anything to preserve [the creditor's] rights is inconsistent with excusable neglect" when the creditor had actual knowledge of the bankruptcy); *Bays v. Hertz Global Holdings, Inc.*, SA-20-CV-141-XR, 2021 WL 5762033 (W.D. Tex. Dec. 1, 2021) (claims discharged and dismissed because plaintiff with notice of the bankruptcy did not file a proof of claim). Similarly, creditors who do not receive notices

because of their own failure to update their address cannot argue lack of due process as a means of avoiding a discharge. *See Greyhound Lines, Inc. v. Rogers, (In re Eagle Bus Mfg., Inc*.), 62 F.3d 730, 735 (5th Cir. 1995) ( "[the creditor] herself is to blame for not receiving the notice because she failed to keep [the debtor] apprised of any changes in her mailing address."); *Thornton*, 626 B.R. at 430 ("Thornton ignores the fact that he did not receive the Notice until after the Bar Date because of his own failure."). And creditors like Appellees who receive adequate notice but fail to object to the Plan, cannot appeal from the confirmation order. *See In re Bludworth*, 93 B.R. at 521.

As discussed below, the Bankruptcy Court's novel view that these well-established duties "do not apply" to bind a non-actor to a predictable consensual third-party release is inexplicable in light of the consistent application of these duties in the bankruptcy context in the Fifth Circuit

### C. Claimants With Knowledge of the Bankruptcy Proceeding in Time To Opt Out of a Third Party Release Consent To the Release By Failing to Opt Out

Given the Fifth Circuit's longstanding approval of third-party opt out releases, this Court should hold that the Exhibit B creditors' actual notice of the bankruptcy proceeding was sufficient to "excite attention and put the party on his guard and call for inquiry" into the potential impact of a third-party release on their lawsuits against the Debtor, potential "successor liability" targets like CHS TX, and

the Debtor's former employees. *Robbins*, 952 F.2d at, 908. *See also Pioneer Brunswick Assoc. Ltd. Partnership*, 507 US 380, 395 (1993) ("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect[.]").[14] When it is well-established in the Fifth Circuit, as in *Tehum*, that a claimant's failure to timely return an opt-out release form is considered consent to the releases, it would be would be incongruous to hold that a creditor with actual notice of the bankruptcy who fails to take steps to procure the opt out release form is what excuses their failure to return the form or otherwise attempt to object to the releases.

This District had the opportunity to consider a claimant's silence as consent to third-party releases under similar facts in *In re CJ Holding*, 597 B.R. at 608-610.

---

[14] As noted, several of the District Courts in Exhibit B cases recognized that claims against the Debtor's former employees based on conduct in the scope of their employment are inherently derivative of claims against the Debtor. *See In re Russell,* 193 B.R. 568, 571–72 (Bankr. S.D. Cal. 1996) ("where the claimants had a pre-petition relationship to the debtor and the circumstance which gives rise to their claim, it is within the fair contemplation of the parties that a contingent claim exists at that point in time."). Such a plaintiff would hold a vicarious liability or *respondeat superior* claim against the Debtor under a negligence theory, or a *Monell* claim in a §1983 action. The purpose of the Consensual Claimant Release and Channeling Injunction is to prevent recovery "from any Released Party" through a court action. These provisions of the Plan would hardly have any effect if a plaintiff could obtain recovery "from any Released Party" for conduct attributable to the Debtor simply by declining to name the Debtor as a party. *See In re Arrowmill Dev. Corp.,* 211 B.R. 497, 503 (Bankr. D.N.J. 1997) ("A discharge in bankruptcy is an involuntary release by operation of law of creditor claims against an entity (both asserted and unasserted) which is enforced by the court.").

There, a claimholder with actual notice of the bankruptcy proceeding did not file a proof of claim, object to the Plan, or appeal the Confirmation Order before it became final. *Id*. at 609. Because the claimholder did not file a proof of claim— as is the case with the Exhibit B Parties—he was not entitled to vote on Plan confirmation. *Id*. The Court recognized, however, that the claimholder could still participate in the bankruptcy proceeding by raising objections to the plan prior to confirmation. *Id*. The Court therefore found that the claimant "consented to the plan by failing to object" and that "[a]llowing the bankruptcy court to approve the Plan releases, including construing [the claimant's] silence as consent, serves the bankruptcy law's purpose of quick and efficient resolution of claims to permit a debtor's business to continue." *Id*.; *see also In re Camp Arrowhead, Ltd*., 451 B.R. 678, 701–02 (Bankr. W.D. Tex. 2011) ("The Fifth Circuit does allow permanent injunctions so long as there is consent," and "[w]ithout an objection, [the bankruptcy court] was entitled to rely on [the creditor's] silence to infer consent at the confirmation hearing."). Notably, the *CJ Holding* Court found consent based on a claimant's general failure to object to the releases prior to confirmation and not on the failure to return a specific form. Like the *CJ Holding* claimant, none of the Exhibit B Parties objected to the releases prior to confirmation in any manner.

In conflict with the *Tehum* Bankruptcy Court's holding that consent could not be determined unless a claimant was mailed the Opt Out Release Form, another

Bankruptcy Court in this District, post-*Purdue*, held that a claimant was bound by a consensual claimant release despite not receiving the opt out release form. *See In re Pipeline*, 2025 WL 686080 at *3-4. As is true with the Exhibit B Parties, the reason the *Pipeline* claimant did not receive the form was "because he did not file a proof of claim." Consistent with the longstanding precedent discussed herein, *the Pipeline* court refused to excuse this inaction. The *Tehum* Bankruptcy Court's holding that there can "never" be constructive notice of a consensual third-party release that binds a claimant therefore misses the point. If a claimant only received constructive notice (e.g., publication notice) of the Consensual Claimant Release and opt out **because of their inaction,** their failure to take steps to ensure they received direct notice should not excuse their failure to opt out. *See In re CiCi's Holdings, Inc.,* 2021 WL 819330, at *10 (Bankr. N.D. Tex. Mar. 3, 2021) (holding third-party releases are consensual when "the Publication Notice referenced the release provisions in the Plan and advised careful review of the release, exculpation, discharge, and injunction provisions in Article VIII of the Plan and emphasized in bold and capitalized typeface that parties' rights may be affected thereby."); *see also In re Paddock Enterprises, LLC,* 2022 WL 1746652, at *45 (Bankr. D. Del. May 31, 2022) (publication notice adequate to provide notice of third-party releases).

The Bankruptcy Court Order also wrongly conflates the requisite "actual notice" for Due Process purposes (i.e., notice of the bankruptcy proceeding) with actual receipt of the specific Opt Out Release Form.  In that regard, anyone with knowledge of the proceeding, acting under a duty of inquiry, would easily have found many publicly-available documents in the bankruptcy proceeding, including the Plan itself, that provided actual notice of the Consensual Claimant Release and the ability to opt out, and could have requested the form.  As the Bankruptcy Court found, the Exhibit B Parties were creditors of the Debtor.  ***Certainly any creditor with notice of the bankruptcy proceeding should have been "excited" enough by that notice to review the Plan.  Reasonable notice that triggered a duty to review the Plan must also be adequate notice of the terms of the Plan.***  The only reason why a creditor with notice of the bankruptcy would not have known about the Consensual Claimant Release and opt out is because they did not take steps to inquire about or protect their rights as creditors.

The Bankruptcy Court's reliance on *In re Placid Oil Co.,* 753 F.3d 151 (2014) is misplaced because it does not address the facts or legal issue here.  There, the Fifth Circuit held that the claimants were unknown creditors whose pre-petition claims were discharged by publication notice.   If anything, *Placid Oil* is consistent with the precedent that knowledge of a bankruptcy requires action because it was undisputed that one of the married creditors in that case "was generally aware of

Placid's bankruptcy," "did not file any proof of claim" and still had his claims discharged by publication notice. *Id*. at 153.

Accordingly, this Court should hold that the Appelles' actual knowledge of the bankruptcy proceeding triggered a duty to inquire about the impact of the proceeding on their rights, a duty to take action to protect any rights they wished to protect, that their failure to take any actions to opt out of a routine, consensual third-party release is consent to that release, and that they are therefore enjoined from prosecuting their Causes of Action against Released Parties.

## **CONCLUSION**

This appeal presents a narrow question. None of the Exhibit B creditors objected prior to Confirmation to the concept of a consensual third-party release, the specific consensual third-party releases here, to the concept of opt out consent, to the specific opt out method here, or to the Plan generally. None appealed the Confirmation Order for these (or any) reasons. None of these subjects were properly raised by Appellees in opposition to Appellant's Motion or can be properly raised in response to this appeal.

This appeal only asks whether decades of Fifth Circuit precedent applies to bind a creditor with actual notice and knowledge of a bankruptcy proceeding to a routine consequence of their inaction when they had the opportunity to opt out of a consensual third-party release and failed to do so. Because that answer should be

"Yes," this Court should reverse the Bankruptcy Court and hold that the Exhibit B creditors are bound by the Consensual Claimant Release and enjoined from protecting their Causes of Action against Released Parties.

Respectfully submitted,

By: */s/ Trevor W. Carolan*
  Trevor W. Carolan
  State Bar No.: 24128898
  Southern District Federal No. 3794850
  **BOWMAN AND BROOKE LLP**
  5850 Granite Parkway, Suite 900
  Plano, TX  75024
  (972) 616-1700 (Telephone)
  Trevor.carolan@bowmanandbrooke.com

  Adam M. Masin
  *Admitted Pro Hac Vice*
  **BOWMAN AND BROOKE LLP**
  750 Lexington Avenue
  New York, NY 10022
  (646) 844-9252 (Telephone)
  Adam.masin@bowmanandbrooke.com

  ***Attorneys for Appellants***
  ***CHS TX, INC. d/b/a YESCARE***

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that the foregoing brief complies with the type-volume limitation in Rule 8015(a)(7)(B) because if contains 9772 words based on the word count of the word-processing system used to prepare the document.

*/s/ Adam M. Masin*
Adam M. Masin
Attorney for CHS TX, Inc.

## CERTIFICATE OF SERVICE

I do hereby certify that on the 31st day of October 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court and served using the CM/ECF system. In addition, a true and correct copy has been electronically mailed or mailed via first-class US mail to the following:

| | |
|---|---|
| Lisa Brown, by and through her attorney of record<br>Todd Schroeder<br>McKeen and Associates<br>645 Griswold Street Ste 4200<br>Detroit, MI 48226<br>fmills@mckeenassociates.com | Cassandra Oliver *as Personal Representative of the Estate of Michael Anderson*, by and through her attorney of record<br>Connor G. Curran<br>ZDP Law, LLC<br>4330 Belleview, Suite 300A<br>Kansas City, MO 64111<br>ccurran@zdplaw.com |
| Christi Buoncristiano, by and through her attorney of record<br>Paul J. Hetznecker<br>1420 Walnut St., Ste 911<br>Philadelphia, PA 19102<br>phetznecker@aol.com | Hassan Davis, pro se Claimant<br>1008 Lake Front Drive<br>Edgewood, MD 21040 |

| | |
|---|---|
| Jesse Dean, by and through his attorney of record<br>D. Michael Noonan<br>Shaheen & Gordon, P.A. (Dover)<br>353 Central Ave., 2nd Fl.<br>P.O. Box 977<br>Dover, NH 03821-0977<br>mnoonan@shaheengordon.com<br><br>Leah Anne O'Farrell<br>Barnes & Thornburg LLP<br>3340 Peachtree Rd. NE<br>Suite 2900<br>Atlanta, GA 30326<br>lofarrell@btlaw.com | Andrew Dicks, by and through his attorney of record<br>Patrick Andrew Thronson<br>Wais, Vogelstein, Forman, Koch & Norman 1829 Reisterstown Road<br>Suite 425<br>Baltimore, MD 21208<br>patrick@malpracticeteam.com |
| Jamonte Fletcher, by and through his attorney of record<br>Daniel P Moylan<br>Zuckerman Spaeder LLP<br>100 East Pratt Street<br>Suite 2440<br>Baltimore, MD 21202-1031<br>dmoylan@zuckerman.com<br><br>Mark Feaster<br>Zuckerman Spaeder LLP<br>485 Madison Avenue, 19th Floor<br>New York, NY 10022<br>mfeaster@zuckerman.com | Chelsea Gilliam, by and through her attorneys of record<br>Eve Lynne Hill<br>Brown Goldstein & Levy, LLP<br>120 East Baltimore St.<br>Ste. 2500<br>Baltimore, MD 21202<br>ehill@browngold.com<br><br>Deborah M Golden<br>The Law Office of Deborah M. Golden<br>700 Pennsylvania Ave. SE, 2nd Floor<br>Washington, DC 20003<br>dgolden@debgoldenlaw.com |
| Chloe Grey, by and through her attorney of record<br>Eve Lynne Hill<br>Brown Goldstein & Levy, LLP<br>120 East Baltimore St.<br>Ste. 2500<br>Baltimore, MD 21202<br>ehill@browngold.com | Kennedy Holland, by and through his attorney of record<br>Eve Lynne Hill<br>Brown Goldstein & Levy, LLP<br>120 East Baltimore St.<br>Ste. 2500<br>Baltimore, MD 21202<br>ehill@browngold.com |

3

| | |
|---|---|
| Thurman Watson, pro se Claimant<br>1889 Addison Road S<br>District Heights, MD 20747 | Trent Mason, by and through his<br>attorney of record<br>Paul J. Hetznecker<br>1420 Walnut St.<br>Ste 911<br>Philadelphia, PA 1910<br>phetznecker@aol.com |
| Susan Blackburn, *as co-personal representative of the Estate of Amanda Mitchell*, by and through her attorney of record<br>Marie A. Mattox<br>Marie A. Mattox, P.A.<br>203 North Gadsden Street<br>Tallahassee, FL 32303<br>Marie@mattoxlaw.com | Larry Parks, pro se Claimant<br>#581520<br>Tomoka Correctional Institution<br>3950 Tiger Bay Road<br>Daytona Beach, FL 32134 |
| Jesus Patino, pro se Claimant<br>5523 Loretto Ave.<br>Philadelphia, PA 19124 | Kevin Pich, by and through his attorney of record<br>James A Wells<br>Gay, Chacker & Ginsburg<br>1731 Spring Garden St.<br>Philadelphia, PA 19130<br>james@gayandchacker.com |
| Todd Thomas, pro se Claimant<br>E32305<br>Apalachee Correctional Institution<br>West Unit<br>52 West Unit Drive<br>Sneads, FL 32460-4165 | Henry Walker, by and through his<br>attorneys of record<br>Orlando Sheppard<br>Burns Sheppard Favors, PLLC<br>121 S. Orange Ave. Suite 1500<br>Orlando, FL 32801<br>orlando@bsflegal.com<br><br>James Roscoe Tanner<br>Tanner Law Group PLLC<br>Tanner Law Group LLC<br>P.O. Box 130662<br>Tampa, FL 33681<br>jrt@jimtannerlaw.com |

*/s/ Adam M. Masin*
Adam M. Masin