**Civil Action #: 4:25-cv-4119 (ASH)**
**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---

CHS TX, INC.

              Appellant,

v.

LISA BROWN; CLARENCE DEAN *as Personal Representative of the Estate of Jesse Dean*; CHRISTI BUONCISTIANO; HASSAN DAVIS; ANDREW DICKS; JAMONTE FLETCHER; CHELSEA GILLIAM; CHLOE GREY; KENNEDY HOLLAND; TRENT MASON; SUSAN BLACKBURN, *as co-personal representative of the Estate of Amanda Mitchell;* CASSANDRA OLIVER *as Personal Representative of the Estate of Michael Anderson*; LARRY PARKS; JESUS PATINO; KEVIN PICH; TODD THOMAS; HENRY WALKER; and THURMAN WATSON.

              Appellees.

On Appeal from the U.S. Bankruptcy Court for the Southern District of Texas (Houston Division)
Case No.: 23-cv-90086 (CML)

---

**JOINT BRIEF OF APPELLEES LISA BROWN, CLARENCE DEAN *as Personal Representative of the Estate of Jesse Dean*, ANDREW DICKS, JAMONTE FLETCHER, <u>CHELSEA GILLIAM, CHLOE GREY, AND KENNEDY HOLLAND</u>**

# Table of Contents

**Page**

I.  STATEMENT OF ISSUE PRESENTED ............................................................................. 1

    A.  Issue Presented ............................................................................................. 1

    B.  Standard of Review ....................................................................................... 1

II.  STATEMENT OF THE CASE .......................................................................................... 2

    A.  Factual Background ....................................................................................... 3

    B.  Factual Background Specific to Each Appellee ............................................. 6

        i.  Lisa Lee Alice Brown ........................................................................... 6

        ii.  Clarence Dean, as personal representative of the Estate of Jesse Dean ...................... 9

        iii.  Andrew Dicks ..................................................................................... 11

        iv.  Jamonte Fletcher ................................................................................ 12

        v.  Chelsea Gilliam, Chloe Grey, and Kennedy Holland ................................. 14

III.  SUMMARY OF ARGUMENT ....................................................................................... 17

IV.  ARGUMENT ................................................................................................................. 17

    A.  Third Party Releases are Allowed as Long As They are Consensual, Which Requires Actual Notice of Intent to Bind Claimants to The Releases ......................... 17

    B.  Fifth Circuit Precedent is Clear that Actual Notice of the Ability to Opt-Out is Required for a Third-Party Release to be Effective. ........................... 19

    C.  Actual Notice was not Provided to Appellees ............................................... 21

    D.  The Appellant's Argument Regarding Lack of Objection to Confirmation is Irrelevant.  22

    E.  Appellant's Reliance on Case Law Regarding Proof of Claim Bar Dates in Misplaced.. 27

V.  STATEMENT REGARDING ORAL ARGUMENT ................................................ 29

VI.  CONCLUSION .............................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barron v. Countryman*,
432 F.3d 590 (5th Cir. 2005) ...................................................................1

*In re Bludworth Bond Shipyard, Inc.*,
93 B.R. 520 (Bankr. S.D. Tex. 1988) ....................................................16

*In re Cahill*,
428 F.3d 536 (5th Cir. 2005) ...................................................................1

*In re Chassix Holdings, Inc.*,
533 B.R. 64 (Bankr. S.D.N.Y. 2015).....................................................19

*City of New York v. New York, N.H. & H.R. Co.*,
344 U.S. 293 (1953)...............................................................................15

*In re CJ Holding Co.*,
597 B.R. 597 (S.D. Tex. 2019) ........................................................13, 17

*DeJoria v. Maghreb Petroleum Expl., S.A.*,
804 F.3d 373 (5th Cir. 2015) .................................................................13

*Doe v. Dallas Indep. Sch. Dist.*,
220 F.3d 380 (5th Cir. 2000) ...................................................................1

*In re GOL Linhas Aereas Inteligentes S.A.*,
672 B.R. 129 (Bankr. S.D.N.Y. 2025)...................................................12

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024) . Bankruptcy.................................................11, 12, 19

*In re Nat'l Gypsum Co.*,
219 F.3d 478 (5th Cir. 2000) ...................................................................1

*Matter of Osborne*,
951 F.3d 691 (5th Cir. 2020) ...................................................................1

*In re Pipeline Health Systems, LLC*,
2025 WL 686080 (Bankr. S.D. Tex. Mar. 3, 2025)........................12, 17

*In re Placid Oil,*
    753 F.3d 151 (5th Cir. 2014) .......................................................13, 15

*In re Red River Talc LLC,*
    670 B.R. 251 (Bankr. S.D. Tex. 2025) .......................................13, 20

*Republic Supply Co. v. Shoaf,*
    815 F.2d 1046 (5th Cir. 1987) ...........................................................16

*In re Robertshaw US Holding Corp.,*
    662 B.R. 300 (Bankr. S.D. Tex. 2024) ................................12, 17, 20

*In re* Shank,
    569 B.R. 238 (S.D. Tex. 2017) ............................................................1

*In re Spirit Airlines, Inc.,*
    668 B.R. 689 (Bankr. S.D.N.Y. 2025)..................................12, 15, 18

*In re SunEdison, Inc.,*
    576 B.R. 453 (Bankr. S.D.N.Y. 2017).................................................19

*In re Transit Group, Inc.,*
    286 B.R. 811 (Bankr. M.D. Fla. 2002) ...............................................19

*Travelers Indem. Co. v. Bailey,*
    557 U.S. 137 (2009)..............................................................................1

**Statutes**

42 U.S.C. section 1983 .....................................................................*passim*

Americans with Disabilities Act, the Rehabilitation Act.........................10

Appellant's Reliance on Case Law .........................................................18

FACT SECTION...........................................................................................7

**Other Authorities**

Bankruptcy Rule 2002 ..............................................................................14

*Decision and Order on YesCare's Omnibus Motion to Enjoin
    Plaintiffs from Prosecuting Cases Against Released Parties* (the
    "Order") ..............................................................................4, 14, 16, 18

*Omnibus Motion to Enjoin Plaintiffs from Prosecuting Cases Against Released Parties* (the "Motion to Enjoin").........................................................3

*Statement Regarding Debtor and Official Committee of Unsecured Creditors' Second Amended Joint Chapter 11* .....................................................7

# I.    STATEMENT OF ISSUE PRESENTED

## A. Issue Presented

Can Appellees, who did not assert claims against the Debtor in its bankruptcy case, be bound to releases of non-debtor third parties contained in the Debtor's bankruptcy plan notwithstanding the Debtor's knowledge of Appellees and the Debtor's failure to provide Appellees with actual notice of an opportunity to opt-out of those releases as required by the Bankruptcy Court?

## B. Standard of Review

The Bankruptcy Court's findings of fact are reviewed for clear error, while its legal conclusions are reviewed de novo. *Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005). But the Court should defer to the Bankruptcy Court's reasonable resolution of any ambiguities in interpreting its orders, because a bankruptcy court's interpretation of its own order is entitled to substantial deference. *In re Nat'l Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, n. 4 (2009) ("Numerous Courts of Appeals [including the Fifth Circuit] have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference.").

A factual finding is clearly erroneous only when the reviewing court, after examining its entire record, is left with the firm and definite conviction that a mistake has been made. *In re Cahill*, 428 F.3d 536, 542 (5th Cir. 2005). If the Bankruptcy Court's account of the evidence is plausible in light of the record viewed in its

entirety, it must not be disturbed. *Matter of Osborne*, 951 F.3d 691, 697 (5th Cir. 2020). Whether a creditor received actual notice of a plan provision or the opportunity to opt out of a third-party release is a question of fact. *In re* Shank, 569 B.R. 238, 251 (S.D. Tex. 2017) (*citing Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000). Accordingly, the Bankruptcy Court's factual findings that Appellees were known creditors who did not receive the Opt-Out Release Form or any notice informing them that they were being bound by third-party releases should be entitled to clear-error deference.

## II.    STATEMENT OF THE CASE

Appellees Lisa Brown, Clarence Dean (as Personal Representative of the Estate of Jesse Dean), Andrew Dicks, Jamonte Fletcher, Chelsea Gilliam, Chloe Grey, and Kennedy Holland (the "Appellees") are (or represent) a handful of individuals that were left with permanent injury or, in at least one case, died at the hands of employees or independent contractors of the Debtor and/or Appellant. The Appellees asserted claims against those employees or independent contractors and affiliates of the Debtor prior to the Debtor's bankruptcy filing. Those employees, independent contractors, and affiliates were not parties to the Debtor's bankruptcy cases.

The Appellant now asserts that a so-called "Claimant Release" in the Debtor's chapter 11 plan bars the Appellees from asserting claims against the employees or

independent contractors.  It is undisputed that the Appellees did not receive an Opt-Out Release Form as part of the Plan solicitation, as required by the Bankruptcy Court's local rules.  Despite this lack of actual notice, the Appellant seeks to enjoin the Appellees from pursuing their claims outside of the Bankruptcy Court, while arguing that the Appellees waived any right to recover in the Bankruptcy Court.  In short, the Appellant argues that because the Appellees had some form of notice regarding the Chapter 11 Case that should impute knowledge of the Claimant Release, and Appellees should now be barred from any recovery notwithstanding the absence of actual notice of an opportunity to opt out of the Claimant Release and despite the horrifying nature of the Appellees' underlying claims.  Such outcome would not only be inequitable but would also contradict clear precedent and procedures set forth by the Bankruptcy Court and the Fifth Circuit.

## A. Factual Background

In May 2022, Corizon Health Inc. ("Corizon") and several of its affiliates, effectuated a combination merger followed by a divisional merger under the Texas Business Organization Code: a combination merger and a divisional merger.  In the combination merger, Corizon and each merger entity combined pursuant to a plan of merger with Corizon continuing as the surviving entity. The divisional merger then created a new entity, Appellant, and allocated Corizon's assets and liabilities between Corizon and Appellant.

Corizon and was allocated all inactive and expired customer contracts, as well as all liabilities related to such contracts, while Appellant was allocated the operating assets and nearly $100 million of senior secured debt obligations. Appellant was subsequently acquired by YesCare Corp. ("YesCare"). On June 1, 2022, Corizon changed its name to Tehum Care Services, Inc. (the "Debtor"). At that time, Appellees had no notice or knowledge of these internal restructuing transactions or the allocation of liabilities between the various entities.

On February 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), initiating Case No. 23-cv-90086 (CML) (the "Chapter 11 Case"). The Debtor filed its *Schedules of Assets and Liabilities* on April 28, 2023 (the "Schedules"). (*See* Ex. 1)[1] The Debtor amended its *Schedule E/F*, which list priority unsecured and general unsecured claims, respectively, on June 20, 2023 (the "Amended Schedules"). (*See* Ex. 2). The Schedules and the Amended Schedules did not include any of the Appellees' claims.

On March 3, 2025, the Bankruptcy Court approved the Debtor's *First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee,*

---

[1] All References to (Ex. _) refer to Appellee's Appendix filed contemporaneously with this Brief.

*Official Committee of Unsecured Creditors and Debtors* (the "Plan").[2] (*See* Appellate-Appendix 000148-276.)[3] Of relevance to this appeal, the Plan contained a so-called "Claimant Release", which purported to bar various parties from asserting claims against non-debtor third parties such as employees, independent contractors, and Appellant.

On May 16, 2025, the Appellant filed its *Omnibus Motion to Enjoin Plaintiffs from Prosecuting Cases Against Released Parties* (the "Motion to Enjoin"). (*See* Appellate-Appendix 000277-353.)  Appellant sought an order enjoining over 100 parties, including the Appellees, from continuing to litigate in federal and state courts against Released Parties (as defined in the Plan).  Appellant argued that these parties should be enjoined because they did not submit an Opt-Out Release Form.  Appellant concedes that the Appellees were not served with the Opt-Out Release Form. Instead, Appellant argues that the Appellees had "constructive notice" of the third-party releases.

On August 7, 2025, the Bankruptcy Court issued its *Decision and Order on YesCare's Omnibus Motion to Enjoin Plaintiffs from Prosecuting Cases Against Released Parties* (the "Order", *see* Appellate-Appendix 000609-620), which is the subject of this appeal.  The Bankruptcy Court properly denied the Motion to Enjoin

---

[2] Capitalized terms used herein but not defined shall have the meaning ascribed in the Plan.
[3] All references to (Appellate-Appendix _) refer to the Appellant's Appendix and Exhibits (ECF No. 9-1).

as it relates to the Appellees because the Debtor never provided an opportunity for the Appellees to opt out of the Claimant Release. In response to the Appellant's argument that its failure to provide such an opportunity should be overlooked because the Appellees had some knowledge of the Debtor's bankruptcy case, the Bankruptcy Court concluded that "there can never be constructive notice of a consensual release between third-parties under a chapter 11 plan." (*See* Order, Appellate-Appendix 00613.) Despite the sound reasoning of the Bankruptcy Court, Appellant initiated this appeal.

## B. Factual Background Specific to Each Appellee

The Bankruptcy Court categorized the over 100 parties that Appellant sought to enjoin as part of the Motion to Enjoin into three different categories. The Appellees are a subset of the parties listed on Exhibit B to the Order.[4] As described by the Bankruptcy Court, none of the Appellees were served the Opt-Out Release Form despite being known to the Debtor. The facts relevant to each Appellee are as follows:

### i. Lisa Lee Alice Brown

In the middle of the night on April 24, 2021, Lisa Lee Alice Brown ("Brown") fell off her bunk at the St. Clair County Jail and hit her head. (R. 002967.)[5] She lost

---

[4] As a footnote in Appellant's brief, Appellant stated that this appeal was limited to the Exhibit B creditors listed in the caption and that Appellant was not pursuing appeal of the other parties listed in Exhibit B.

[5] All references to (R. ____) refer to Appellant's Designation of Record and Statement of Issues on Appeal (ECF No. 6-2).

awareness of where she was and the ability to sit up or move her arms or legs. (R. 002968.) She did not eat food, toilet, or maneuver from supine to sitting position for about forty-eight hours.   (R. 002969-70).   And yet, she was never physically evaluated by a physician, nurse practitioner, or physician assistant at St. Clair County Jail. (R. 002969-70).

Brown was finally transported to the hospital. (R. 002967-68.) A CT scan revealed Brown had a vertebra fracture and locked facet in her cervical spine. (R. 002970.)  Brown could not move her arms or legs, and she was experiencing severe neck pain. (R. 002970). Upon a neurological examination, Brown was only able to wiggle her right toes and fingers slightly, but otherwise appeared to be paralyzed from the neck down. (R. 002971.)  Brown ultimately underwent two (2) cervical spine surgeries, including a fusion. (R. 002971.)

Despite the surgical intervention, Brown has permanent neurological damage and has been diagnosed with paralysis; she has decreased sensation from her chest down to her toes, cannot use her left hand, and has limited function of her left leg. (R. 002972.) She cannot ambulate without assistance and suffers from urinary and bowel incontinence. (R. 002972.) Prior to her fall in jail, where she was incarcerated for driving while intoxicated, Brown was ambulating well, eating her meals, and alert and oriented. (R. 002967.)

Brown filed her Original Complaint on October 23, 2023 in the United States

District Court in the Eastern District of Michigan. Brown sued a group of defendants, including individual Corrections Officers, "CHS TX, Inc. f/k/a Corizon Health," and a group of licensed registered nurses and an Internal Medicine physician that she alleged were employed by "CHS TX, Inc. f/k/a Corizon Health." She sued the group of Corrections Officers for violations of her civil rights pursuant to 42 U.S.C. section 1983, asserting deliberate indifference to her serious medical needs. Brown also sued Appellant and its nurses and physician for medical malpractice, negligence, and gross negligence. (R. 002938.) Brown filed her First Amended Complaint on November 20, 2023. (R. 002959-88.)

Debtor is not a named defendant in Brown's lawsuit. (R. 002959 – 002988). She sued "CHS TX, Inc. f/k/a Corizon Health" and employees/former employees of CHS TX, Inc. (R. 002959 – 002988). Those defendants denied CHS TX, Inc. was formerly known as Corizon Health, and they made no effort to clarify that CHS TX, Inc. had a relationship to Debtor or to otherwise demystify its corporate structure. (Ex. 4, at pp. 6-8, 21, 27-28). No suggestion of bankruptcy was filed in Brown's lawsuit. (Appellate-Appendix 000735; Ex. 3). And CHS TX, Inc. only filed a Motion to Stay on June 9, 2025, well past the claims bar date and the date for Brown to opt-out of the plan. (Ex. 3.)

Brown did not receive the Opt-Out Release Form prior to the deadline to opt-out. (Appellate-Appendix 000609-620). In the Motion to Enjoin, Appellant listed

Brown as "having received notice of the Claims Bar Date and Solicitation Materials related to the Plan, including the Opt-Out Release Form. (Appellate-Appendix 000308). The Debtor's records do not substantiate that claim as Brown is not found on the list of persons served with the Opt-Out Release Form. (*See* Ex. 5.)

### ii. Clarence Dean, as personal representative of the Estate of Jesse Dean

Clarence Dean (the "Dean Personal Representative") is the personal representative of the estate of Jesse Dean ("Dean"). Dean was an Immigration and Customs Enforcement ("ICE") detainee held at Calhoun County Jail in Battle Creek, Michigan. He arrived at the jail on December 31, 2020. While at the jail, Dean sought medical care but his request was repeatedly dismissed and his symptoms ignored. After suffering from severe pain for over a month, he died on February 5, 2021 of an untreated ulcer – an easily treatable condition. His death could have easily been prevented with appropriate evaluation and treatment. Corizon, who had a contract with the Calhoun County Jail to provide medical services, failed to provide appropriate evaluation and treatment.

On April 19, 2023, the Dean Personal Representative filed a civil rights action in the United States District Court for the Western District of Michigan against Calhoun County, Michigan, the United States of America, and individuals responsible for the medical care of Dean regarding the wrongful death of Dean, initiating case number 23-cv-00408. The Debtor, YesCare, and/or the Appellant

were not named in the action.

On October 11, 2024, the Dean Personal Representative filed his Second Amended Complaint.  The Second Amended Complaint does not include CHS, the Debtor, YesCare or any of their affiliates.  In fact, the Dean Personal Representative has never asserted a claim against the Debtor or its estate, but instead has focused on obtaining recovery from the defendants listed in the Second Amended Complaint and any applicable insurance.  As evidence of this, the Dean Personal Representative did not file a proof of claim in the Debtor's bankruptcy case.

On November 30, 2023, prior bankruptcy counsel for the Dean Personal Representative filed an *Objection and Reservation of Rights to Approval of the Second Amended Disclosure Statement Regarding Debtor and Official Committee of Unsecured Creditors' Second Amended Joint Chapter 11 Plan*, stating that the Dean Personal Representative did not seek to recover anything from the Debtor but sought to preserve his rights and object to the injunctive language to the extent it may apply to the claims asserted by the Dean Personal Representative in the Western District of Michigan case.

The Motion to Enjoin states that the Dean Personal Representative received notice because Dean "is listed on the creditor matrix and is listed as having receive notice of the Claims Bar Date." (*See* Appellate-Appendix 000312.)  Despite this assertion, Dean was not listed in the creditor matrix of the solicitation mailing or any

other list of claimholders. (*See* Ex. 5)  Instead, Dean was only listed twice as being part of the Master Service List. (*See* Ex. 5, at p. 97-100, 103-107.)  The distinction is important because parties listed on the Master Service List did not get the ability to opt out of the releases. (*See* Ex. 5, at p. 5.)  They were not served with a Notice of Non-Voting Status, Ballot, or an Opt-Out Release form. (*See* Ex. 5, at p. 5).

### iii. Andrew Dicks

Andrew Joseph Dicks, Sr. ("Dicks") is incarcerated at Western Correctional Institution in Cumberland, Maryland. On August 6, 2021, he fell down a staircase in the facility and immediately reported significant knee pain. Instead of ordering diagnostic imaging, the nursing and medical staff employed by YesCare treated the injury as a simple sprain. The failure to investigate the injury prevented proper diagnosis of a torn meniscus. As a result, Dicks received months of ineffective or nonexistent treatment, including physical therapy that did not address the underlying damage and caused deterioration of his knee.

In June 2022, after Dicks repeatedly sought appropriate medical evaluation, a YesCare nurse filed a false misconduct report alleging she observed him masturbating in the health area. An internal investigation later determined the allegation to be unsubstantiated, but during the weeks until that determination, Dicks lost his institutional job and related privileges. He did not regain those privileges until late 2025.

On September 8, 2023, Dicks filed a *pro se* civil rights action in the United States District Court for the District of Maryland, alleging violations of his constitutional rights under 42 U.S.C. § 1983 arising from YesCare's failure to diagnose and treat his knee injury and from the retaliatory false report. YesCare answered his amended complaint on March 12, 2024, reflecting actual knowledge of his claims. No scheduling order has been entered and discovery has not commenced.

Despite this ongoing litigation, and despite being a known creditor under the Solicitation Order, Dicks was never served with the Solicitation Package, Opt-Out Release Form, Ballot, Confirmation Hearing Notice, or any other materials the Bankruptcy Court required to be provided to incarcerated claimants. The Motion to Enjoin asserts only that Dicks "had actual knowledge of the bankruptcy proceeding because a Suggestion of Bankruptcy was filed [in his civil case] on February 7, 2025," just 24 days before the March 3, 2025 confirmation hearing. (Appellate-Appendix 000312.) That filing contained none of the mandated disclosures. Even if it could constitute notice—which it cannot—it was untimely under Rule 2002(b)(2), which requires at least 28 days' notice of a confirmation hearing.

### iv. Jamonte Fletcher

Jamonte Jamar Fletcher ("Fletcher"), who is currently incarcerated at Roxbury Correctional Institution in Maryland, was routinely denied the bare minimum of

dental care that was necessary under the prevailing standards of dental and related medical care applicable in Maryland correctional facilities. As a result of years of delays and denials in necessary care from his providers, Fletcher unnecessarily lost two teeth, sustained damage to multiple other teeth, including cavities that unnecessarily progressed on at least five teeth, and endured years of acute and chronic dental pain and suffering. To seek relief from these injuries, on June 20, 2023, Fletcher filed suit in the District of Maryland, proceeding *pro se*, asserting § 1983 violations.[6] Over a year later, on July 12, 2024, the Court appointed Zuckerman Spaeder, LLP as pro bono counsel.

Fletcher only received notice of the bankruptcy proceeding against Debtor when a Suggestion of Bankruptcy was filed in his case on November 22, 2023. (*See* Appellate-Appendix 000926-27.)  In its Motion to Enjoin, Appellant does not allege that Fletcher received any other forms of notice or had actual notice of the Plan or its terms. (*See* Appellate-Appendix 000313.) The Suggestion of Bankruptcy did not mention any entity other than the Debtor, or suggest that proceedings against other entities were stayed. Nor did the Suggestion of Bankruptcy state that Fletcher might be prevented from pursuing claims against anyone other than the Debtor.

Fletcher originally asserted claims against the Debtor, YesCare, and one related individual, as well as two state officials. Following the Suggestion of Bankruptcy, the

---

[6] *Fletcher v. YesCare Corp.*, et al. Case No. 1:23-cv-01579 (D.Md) ("Fletcher Action").

district court stayed proceedings only against the Debtor, while allowing Fletcher's claims against all other defendants to proceed. Following the district court's stay order, the remaining YesCare defendants (other than the Debtor) answered Fletcher's *pro se* complaint on March 18, 2024.

Fletcher amended his complaint to state § 1983 and related state law claims against (1) one Maryland state official, (2) a group of dental providers having no corporate affiliation to YesCare, and (3) Appellant, in coordinating the provision of dental and related medical care in Maryland correctional facilities, and its direct responsibility for providing certain forms of dental care, such as oral surgeries and emergency dental care. Fletcher dismissed claims against the Debtor as a defendant.

Fletcher first learned of the Plan and its confirmation long after the fact—specifically, from a letter sent by counsel for Appellant on May 6, 2025. In Exhibit A to the Motion to Enjoin, Appellant alleged only that Fletcher had general notice of the bankruptcy proceeding based on the Suggestion of Bankruptcy, but did not allege that he received any notice of the Plan itself, much less a Ballot or Opt-Out Release Form.

Through his third amended complaint in Maryland, Fletcher intends to proceed against Appellant but *not* against the Debtor, YesCare, or the related individual named in his earlier *pro se* complaints. On October 17, 2025, Appellant answered the third amended complaint.

### v. Chelsea Gilliam, Chloe Grey, and Kennedy Holland

Chelsea Gilliam ("Gilliam"), Chloe Grey ("Grey"), and Kennedy Holland ("Holland") are three transgender women. Gilliam and Holland were previously incarcerated within the Maryland Department of Public Safety and Correctional Services (the "Department"), while Grey remains incarcerated. All three were held in men's facilities, subject to sexual and physical abuse, and denied gender affirming medical care, even when it had been prescribed by specialists.

These three women have filed suit in the United States District Court for the District of Maryland seeking damages and — for Grey, injunctive relief not relevant here — against the Department, YesCare, and individual Doe defendants yet unknown, including "Health Care Does," who they believe to be medical providers and other staff who were contracted or employed directly by the Department at the facilities where Plaintiffs were incarcerated.  Whether these Does were YesCare employees remains unknown.  All three women asserted claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Rehabilitation Act, and state tort law. Following the district court's December 20, 2024 decision granting in part and denying in part the Department Defendants' motion to dismiss, all three plaintiffs have § 1983 claims against the Health Care Does in their individual capacity remaining in the case and Ms. Grey has a § 1983 claim against YesCare remaining as well.

The action was filed originally only by Gilliam on April 18, 2023, and

included a claim against Corizon Health.  On May 1, 2023, Gilliam filed an amended complaint removing Corizon as a defendant, while retaining her claims against the Health Care Does. ECF No. 13. On May 8, 2023, the Debtor filed a Suggestion of Bankruptcy. (*See* Appellate-Appendix 000934-35.)  The Suggestion of Bankruptcy did not reference any other corporate or individual parties, nor did it state that claims against other corporate or individual parties could be released in bankruptcy proceedings. (*See* Appellate-Appendix 000934-35.)  That day, the district court issued an order that "as the Suggestion of Bankruptcy was only as to one defendant not the entire case . . . [the] [c]ase should proceed with remaining defendants as noted on the docket." (*See* Ex. 6.)

On July 21, 2023, Holland joined with Gilliam to file a Second Amended Complaint.  The complaint alleged that the Health Care Does failed to provide her hormone medication as prescribed, including lapses of care lasting up to two months. (*See* Appellate-Appendix 000938-001064)  On November 2, 2023, Grey joined with the other two plaintiffs to file a Third Amended Complaint. In it, she alleged that YesCare and the Health Care Does refused to provide her with the specialist-recommended doses of her hormone medication.

On July 18, 2024, the plaintiffs filed a Fourth Amended Complaint to add additional state law claims. YesCare filed an Answer to the Fourth Amended Complaint on August 15, 2024.  In the Motion to Enjoin, Appellant argued that

Gilliam, Grey, and Kennedy received proper notice because of the suggestion of bankruptcy filed in the underlying litigation.  (*See* Appellate-Appendix 000315).

## III.    SUMMARY OF ARGUMENT

All parties agree that the Appellees were not provided with the Opt-Out Release Form required by applicable case law and procedures.  That should end this appeal and the Court should affirm the Order.  Appellant, however, argues that the Debtors' failure to provide the Opt-Out Release Form to the Appellees is irrelevant.  Appellant's argument is, in effect, that once a party has any notice of a bankruptcy proceeding that party is bound to anything that happens in that proceeding, with or without further notice.  Appellant's argument has no support in case law, bankruptcy procedure, or logic as the Bankruptcy Court properly found.

## IV.    ARGUMENT

### A. Third Party Releases are Allowed as Long As They are Consensual, Which Requires Actual Notice of Intent to Bind Claimants to The Releases

Chapter 11 plans can only provide third-party releases (i.e., releases by non-debtor parties such as Appellees in favor of third parties that are not themselves in bankruptcy) in limited, specific circumstances – mainly the release must be consensual.  *See Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 218 (2024) ("But the catchall cannot be fairly read to endow a bankruptcy court with the radically different power to discharge the debts of a nondebtor without the consent of affected nondebtor claimants.").  Bankruptcy courts often conclude that third-party releases

are consensual where a debtor provides notice of the releases to parties intended to be giving them, along with an opportunity to opt out of granting the releases by returning a so-called opt-out from to the debtor. *See, e.g., In re Robertshaw*, at 323 ("Hundreds of chapter 11 cases have been confirmed in this District with consensual third-party releases with an opt-out."); *In re Pipeline Health Systems, LLC*, 2025 WL 686080, *3–4 (Bankr. S.D. Tex. Mar. 3, 2025) ("Opt-out procedures are a proper means to obtain consent to third-party releases in a chapter 11 plan."); *In re Spirit Airlines, Inc.*, 668 B.R. 689, 703 (Bankr. S.D.N.Y. 2025) ("Decisions in this District generally permit use of an opt-out mechanism if the affected parties receive clear and prominent notice and explanation of the releases and are provided an opportunity to decline to grant them."). The requirement of consensual releases has always been the rule in the Fifth Circuit.  *In re GOL Linhas Aereas Inteligentes S.A.*, 672 B.R. 129, 164 (Bankr. S.D.N.Y. 2025) (discussing Fifth Circuit having barred nonconsensual release prior to *Purdue*).

Appellant mischaracterizes the finding of *Purdue*.  Appellant states that "[t]he release in *Purdue* was nonconsensual, unlike here, because it would have bound even those who objected to it prior to confirmation."   *Purdue* was clear that it made no determination on "what qualifies as a consensual release or pass upon a plan that provides for the full satisfaction of claims against a third-party nondebtor." *Purdue*, 603 U.S. at 226.  Therefore, the argument that third-party releases are only

nonconsensual if confirmed over a prior objection oversimplifies the question, which has explicitly not been decided by the Supreme Court.

### B. Fifth Circuit Precedent is Clear that Actual Notice of the Ability to Opt-Out is Required for a Third-Party Release to be Effective.

As properly pointed out by the Bankruptcy Court, constructive notice cannot be sufficient to bind creditors to a third party release. The Procedures for Complex Cases in the Southern District of Texas states:

> If a proposed plan seeks consensual pre- or post-petition releases with respect to claims that creditors may hold against non-debtor parties, then a ballot must be sent to creditors entitled to vote on the proposed plan and notices must be sent to non-voting creditors and parties-in-interest. The ballot and the notice must inform the creditors of such releases and provide a box to check to indicate assent or opposition to such consensual releases together with a method for returning the ballot or notice.

Procedures for Complex Cases in the Southern District of Texas, Section O. This provision is unambiguous and in line with Fifth Circuit case law on the issue. A third party release of a known claim can only be effectuated if the holder of that claim consents after being provided with actual notice. *See, e.g., In re Placid Oil*, 753 F.3d 151, 154 (5th Cir. 2014); *In re CJ Holding Co.*, 597 B.R. 597, 609-10 (Bankr. S.D. Tex. 2019) (finding that silence is only consent after receiving actual notice of the release); *In re Red River Talc LLC*, 670 B.R. 251, 296 (Bankr. S.D. Tex. 2025).

Appellant misapplies *Mullane v. Central Hanover Bank & Trust Co..*

Appellant relies on *Mullane* for the proposition that due process simply requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  339 U.S. 306, 314 (1950). The Fifth Circuit has held that the "suggestion that an individual's knowledge of a bankruptcy proceeding always qualifies as adequate notice obviates the Supreme Court's analysis in *Mullane* and misinterprets this Court's holdings in *In re Sam* and *In re Christopher*."  *In re Kendavis Holding Co.*, 249 F.3d 383, 387 (5th Cir. 2001).  Even had due process been satisfied here, Appellant fails to recognize that due process merely provides the bare minimum for notice.  *DeJoria v. Maghreb Petroleum Expl., S.A.,* 804 F.3d 373, 387 (5th Cir. 2015).  The Fifth Circuit and the Southern District of Texas have determined what constitutes reasonable notice in the context of third-party releases, and that is actual receipt of an opt out form.

The Appellant's argument, if accepted, would mean that no specific notice or opportunity to opt out would need to be provided to parties sought to be bound to non-debtor third party releases.  Parties would be left on their own to ascertain whether such releases might apply to them and then fashion their own, ad hoc approaches to opting out, rather than the clear, standardized approach adopted to date in this District and this Circuit.  The Appellant's view is not the law and has been soundly rejected to date.  It should not be adopted here.

### C. Actual Notice was not Provided to Appellees.

It is undisputed that the Appellees were all known parties in interest to the Debtor.  It is also undisputed that the Debtor did not provide any of the Appellees with an Opt-Out Release Form or Ballot.  Appellees have shown as much.  *See supra* Section II.B.  Appellant does not argue to the contrary.  *See e.g.,* Appellant Brief, at p. 4 ("Appellees were provided actual notice of the Bankruptcy Proceeding through a Suggestion of Bankruptcy, motion, and/or a stay Order filed in their underlying case, and/or through one or more notices served in the bankruptcy proceeding"); *see also* Appellant Brief, at p. 19 ("All Exhibit B Parties had the ability to request notices from the bankruptcy proceeding pursuant to Bankruptcy Rule 2002, and had they done so, the Solicitation Order required the Solicitation Agent to send them the Solicitation Package described below, which included the Opt-Out Release Form.")[7] The record is clear that the Debtor did not serve the Opt-Out Release Form on any of the Appellees. The burden of that action or inaction lies with the Debtors and Appellant, not with the Appellees.  Under Fifth Circuit law and the governing procedures of the Southern District of Texas, known creditors may be bound by a non-debtor, opt-out release only if they actually receive the Opt-Out Release Form. *See In re Placid Oil Co.*, 753 F.3d 151, 154–55 (5th Cir. 2014); *In re CJ Holding*

---

[7]In addition to the reasons set forth in this brief that the Appellees are not required to affirmatively seek out the right to opt-out of any third party release, it is worth noting that the Dean Personal Representative had a *Notice of Appearance and Request for Service* filed by his prior bankruptcy counsel and the Debtor still did not serve the Dean Personal Representative with a Solicitation Package.

*Co.*, 2015 WL 1926352, at 7 (Bankr. S.D. Tex. Apr. 24, 2015). Appellant's reliance on constructive notice and docket access fails both the constitutional minimum under *Mullane* and the heightened requirements for opt-out releases under controlling Fifth Circuit and Southern District of Texas authority.

### D. The Appellant's Argument Regarding Lack of Objection to Confirmation is Irrelevant.

The Appellant argues that the Appellees are barred from challenging the third-party releases because they did not object at the confirmation hearing or appeal the Confirmation Order.  First, this argument mischaracterizes the Appellees' argument. The Appellees do not argue that the Plan should not have been confirmed due to the third-party releases; they merely argue that the third-party releases is not effective as to the Appellees because they did not receive the Opt-Out Release Form.  *See, e.g.,* Procedures for Complex Cases in the Southern District of Texas, Section O, Plan Confirmation, ¶ 40; *In re Spirit Airlines, Inc.*, 668 B.R. 689, 703 (Bankr. S.D.N.Y. 2025) ("An opt-out provides that a third-party release *will be effective as to each party who is sent* a ballot or opt-out form that clearly explains that the ballot or opt-out form must be returned and the opt-out box checked if the party elects not to approve the third-party release.")

Second, that argument inverts basic due process principles. A party cannot be deemed to have waived their objection to plan provisions when they were never given notice that those provisions purported to bind them. Appellees had no duty to

object at confirmation because the Debtors never provided the specific notice required by the Bankruptcy Court's order to inform Appellees that the Plan purported to bind them to third-party releases.

Appellant's waiver theory asserts that any party with generic notice of a bankruptcy is obligated to object "just in case" a plan provision might later be asserted against them— even when the debtor never identified the party as one whose rights the plan sought to affect and never provided the solicitation materials required to obtain consent. Such a rule both ignores due process and renders meaningless the Bankruptcy Rules' notice requirements by forcing every creditor with general knowledge of a bankruptcy to monitor every filing indefinitely—even when the Debtor's own court-approved solicitation procedures exclude them.

Known creditors and other parties are entitled to "actual notice" of the specific actions affecting their rights; while constructive notice suffices only for unknown creditors. *In re Placid Oil Co.*, 753 F.3d 151, 154–55 (5th Cir. 2014). And the Supreme Court has held "even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297 (1953) ("When the judge ordered notice by mail to be given the appearing creditors, New York City acted reasonably in waiting to receive the same treatment."). Here, the Debtors never identified the Appellees as creditors whose

23

claims would be released, never designated them as Releasing Parties, never served the Opt-Out Release Form required to obtain consent, and never provided the Solicitation Package required by the Solicitation Order. As the Bankruptcy Court explained, these parties, who were known to the Debtor, "had to receive actual notice—i.e., the Opt-Out Release Form—before their claims could be released." *See* Order, at 5.

Appellant's authorities confirm the governing distinction between actual notice of the plan provision at issue versus general knowledge that a bankruptcy exists. In *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987), the plan explicitly stated that Shoaf's guaranty would be released, and Republic received the plan itself as part of formal solicitation. Republic not only read the guarantor-release provision, but objected to it on the record at the disclosure-statement hearing, where the bankruptcy court told Republic that the release was being sought and that any challenge must be raised at confirmation. Republic then received the final plan containing the same release and chose neither to object nor appeal. The Fifth Circuit enforced the release only because Republic had unmistakable, repeated notice of the precise provision and failed to act—conditions wholly absent here.

In *In re Bludworth Bond Shipyard, Inc.*, 93 B.R. 520 (Bankr. S.D. Tex. 1988), the court held that waiver depends on proper notice. The claimants were served with the plan and a clear objection deadline, and waiver followed only because they filed

nothing by that date. In contrast, the Bankruptcy Court found that the Appellees were not noticed here of the third party releases and their opportunity to opt out of them, as the Appellant concedes.

In *In re CJ Holding Co.*, 597 B.R. 597 (S.D. Tex. 2019), the creditor received the bar-date notice and the full solicitation package—including the plan, disclosure statement, confirmation notice, and the opt-out release form—and was therefore deemed a Releasing Party when he failed to opt out or object. The court found consent because he had actual notice of the release and a clear opportunity to withhold it. None of those conditions exist here.

Recent decisions from this district like *Pipeline Health* and *Robertshaw* reinforce the same fundamental rule that where a debtor seeks to bind a party to a release, the debtor must give that party notice of the release and an opportunity to opt out. In *Pipeline Health System, LLC*, Case No. 22-90291, 2025 WL 686080 (Bankr. S.D. Tex. Mar. 3, 2025), the court enforced opt-out releases only after finding that the debtor mailed the full solicitation package—including the plan, disclosure statement, confirmation notice, and opt-out mechanism—to all affected creditors. In *In re Robertshaw US Holding Corp.*, 662 B.R. 300 (Bankr. S.D. Tex. 2024), the court upheld opt-out releases because voting and non-voting creditors were actually served with ballots or notices containing the release language and opt-out option, and the record showed that more than 100 creditors exercised that right.  Here, that didn't

happen – the Appellant concedes that the Debtor never provided the required notice of the release and opportunity to opt out.  Whether that is because the Debtor did not believe the Appellees were covered by the releases, or because of an inadvertent omission, the same result must occur: the Appellees cannot be said to have consented to releases where they never had the opportunity to opt out.

Appellant points out that some Appellees became aware of the existence of the Bankruptcy Case because suggestions of bankruptcy were filed in their underlying lawsuits. Mere knowledge of a bankruptcy is not enough to bind a party to a third-party release. As the Bankruptcy Court held, "there can never be constructive notice of a consensual release between third parties under a chapter 11 plan." Order, at 5. In each of Appellant's cases, the creditor received actual notice of the specific release provision. That notice is missing here. Appellant cites no decision enforcing a consensual third-party release against a known creditor who never received the court-mandated solicitation materials. *See Spirit Airlines,* 668 B.R. at 703 (an opt-out is only effective as to parties the opt-out is sent to).

Appellant's rule would impose an unworkable burden on known creditors. It would require any creditor with general awareness of a bankruptcy—including those the debtors themselves elected not to solicit—to obtain the plan on their own, parse complex release provisions never directed at them, hire bankruptcy counsel to assess potential applicability, and file protective objections "just in case." Nothing in the

Bankruptcy Code, the Rules, or due process requires that. Appellant's approach would nullify court-approved solicitation procedures and permit releases by ambush.

Appellant's position would also defeat the very solicitation procedures the Debtor itself proposed and the Bankruptcy Court approved. The Solicitation Order—drafted and submitted by the plan proponents—set out the exclusive method for identifying which PI/WD claimants were being asked to grant consensual third-party releases, and it required service of the Opt-Out Release Form as the mechanism for obtaining that consent. See Order, at 5. To now enforce the releases against creditors who never received that Form would render the Solicitation Order meaningless, would allow the Debtor to disregard the procedures it represented to the Court were necessary, and effective enforce a nonconsensual release against the Appellees.

### E. Appellant's Reliance on Case Law Regarding Proof of Claim Bar Dates in Misplaced.

Appellant's case law which it attempts to use to support its expansive view of inferred consent does not address third party releases. Instead, Appellant relies on general statements that parties must act to protect their rights vis-à-vis a debtor in bankruptcy. This is true, but the extraordinary nature of third party releases in a bankruptcy plan requires more. The Appellant's reliance on decisions dealing with proof of claim bar dates is misplaced because a bar date notice is not analogous to notice of a third party release.

Appellant cites cases involving the adequacy of notice of proof of claim bar

dates to argue that creditors bear the burden to protect their interests upon receiving notice of a bankruptcy filing.  While this is generally true, Appellant's argument ignores a fundamental distinction: notice of a claims bar date informs creditors that they must file a claim to protect their interests *against the debtor*, whereas notice of a third party release informs creditors that they must act to protect their interests *against a non-debtor*.  *See e.g.*, *Purdue*, 603 U.S. at 216 (discussing that Section 1123 explicitly permits a plan to address and modify the rights of creditors holding claims against the debtor or its estate).

Under Appellant's theory, a party—regardless of whether they are a creditor of the debtor, given any notice of the release itself, or afforded an opportunity to opt out of the release—would be deemed to have released all claims against non-debtors merely because it received notice of the bankruptcy proceedings. No court has endorsed such a rule, and certainly not the Fifth Circuit. To the contrary, courts consistently treat non-debtor releases as extraordinary and permissible only upon a showing of actual consent. *See In re SunEdison, Inc.*, 576 B.R. 453, 461-62 (Bankr. S.D.N.Y. 2017) ("third party releases are proper only in rare and unique circumstances"); *In re Transit Group, Inc.*, 286 B.R. 811, 820 (Bankr. M.D. Fla. 2002) ("Non-debtor releases are extraordinary and should be reserved for unusual circumstances"); *In re Chassix Holdings, Inc.*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015) (implying consent to third party releases based on creditors inaction "is simply

not realistic or fair and would stretch the meaning of consent beyond the breaking point").

The Fifth Circuit and the courts within it have recognized that non-debtor third party releases are permissible only upon affirmative consent and heightened notice. *Compare In re Red River Talc LLC*, 670 B.R. 251, 295-96 (Bankr. S.D. Tex. 2025) (concluding that third-party releases were improper because "voters had no opportunity to opt in or opt out of" the releases) with *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024) (approving consensual third party releases only after finding that "parties in interest were provided detailed notice about the Plan, the deadline to object to plan confirmation, the voting deadline, and the opportunity to opt out of the third-party releases"). This case accords with *Red River Talc*: the Appellees had no opportunity to opt out of the releases to which the Appellant now seeks to bind them. The same result should obtain as well – the Appellees are not bound to releases from which they could never opt out.

By attempting to transplant claims bar date notice principles into the context of third party releases, Appellant seeks to impose on creditors an unrealistic duty to foresee and protect against the elimination of their rights against a non-debtor. There is no statutory or common law authority that recognizes this burden, and furthermore, imposing such a duty would render due process meaningless.

## V.    STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that oral argument is unnecessary. The Appellant's contention that "the Fifth Circuit has not considered [the legal principles at issue] in the context of a consensual third-party release is patently false. Not only has the Bankruptcy Court considered the issue, it has also promulgated procedures regarding same. The Debtor was required to serve the Appellees with an Opt-Out Release Form to make them Consensual Claimants. The Debtor failed to do so. Therefore, the Appellees are not Consensual Claimants. Oral argument will not change any of these undisputed facts or legal conclusion.

## VI.    CONCLUSION

This appeal is straightforward. The Debtor failed to serve the Appellees with the Opt-Out Release Form as required by precedent and procedures within this district. Therefore, the third-party releases in the Plan cannot be effective as to the Appellees. The Order is well-reasoned and properly supported and should be affirmed by this Court.

[SIGNATURES ON FOLLOWING PAGE]

Dated: December 1, 2025

Respectfully submitted,

*/s/ Leah A. O'Farrell*

Leah A. O'Farrell (*Pro Hac Vice*)
BARNES & THORNBURG LLP
3340 Peachtree Rd., N.E., Suite 2900
Atlanta, GA 30326
Tel: (404) 264-4088
lofarrell@btlaw.com

and

Kenneth P. Kansa (*pro hac vice forthcoming*)
Barnes & Thornburg LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606-2833
Telephone: (312) 214-4583
Email:  kkansa@btlaw.com

*Counsel for Clarence Dean, as Personal Representative of the Estate of Jesse Dean*

*/s/ Patrick A. Thronson*
Patrick A. Thronson (*pro hac forthcoming*)
Wais, Vogelstein, Forman, Koch & Norman, LLC
1829 Reisterstown Road, Suite 425
Baltimore, Maryland 21208
Tel: (410) 998-3600
Fax: (410) 593-1642
patrick@malpracticeteam.com

*Counsel for Andrew Dicks*

 */s/ Daniel P. Moylan*
Daniel P. Moylan (admitted *pro hac vice*)
Zuckerman Spaeder LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel: 410-949-1159
Fax: 410-659-0436
E-mail: dmoylan@zuckerman.com

Mark J. Feaster (admitted *pro hac vice*)
Zuckerman Spaeder LLP
485 Madison Avenue, 19th Floor
New York, NY 10022
Tel: 212-897-2184
Fax: 212-704-4256
E-mail: mfeaster@zuckerman.com

*Counsel for Appellee Jamonte Jamar Fletcher*

_/s/ Deborah M. Golden_
Deborah    M.    Golden    (_pro    hac    forthcoming_)
Golden Law
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
(202) 630-0332
dgolden@debgoldenlaw.com

_Counsel for Chelsea Gilliam, Chloe Grey, and Kennedy Holland_

_/s/ Ashley N.Morgan_
Ryan E. Chapple
State Bar No. 24036354
Southern District Federal No. 33327
rchapple@cstrial.com
Ashley N. Morgan,
State Bar No. 24091339
Southern District Federal No. 3884049
amorgan@cstrial.com
Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011—Facsimile

_Counsel for Lisa Lee Alice Brown_